# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**BRYAN PURCELL** and
**GEORGENE STERGALAS,**

      Plaintiffs,

v.

**IMAD FADLALLAH**, individually and
In his official capacity as Principal of
Dearborn Fordson High School,

**YOUSSEF  MOSALLAM,** individually and
In his official capacity as Principal of Dearborn
Fordson High School,

**MAYSAM ALIE-BAZZI,** individually and in
Her official capacity as Assistant Principal of
Dearborn Fordson High School,

**BRIAN WHISTON**, Individually and in his
Official capacity as Superintendent of Dearborn
Public Schools,

**THOMAS RAFFERTY**, individually and in his
Official capacity as Human Resources Director
And Independent Contractor/Consultant to
Dearborn Public Schools, and

**DEARBORN PUBLIC SCHOOLS**, a Michigan
Municipal corporation,

      Defendants.

Case No. 2:10-cv-13444-RHC-MJH

Hon. Robert H. Cleland
Magistrate Michael Hluchaniuk

_____/

DEBORAH K. SCHLUSSEL (P56420)
LAW OFFICE OF DEBBIE SCHLUSSEL
Attorney for Plaintiffs
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409

KEVIN T. SUTTON (P65364)
LUSK & ALBERTSON
Attorney for Defendants
40950 Woodward Avenue, Suite 350
Bloomfield Hills, MI  48304-5129
(248) 988-5695

_____/

### AMENDED COMPLAINT

NOW COMES Plaintiffs, BRYAN PURCELL and GEORGENE STERGALAS, by and

through their attorney, DEBORAH K. SCHLUSSEL, and for their Complaint, state as follows:

### JURISDICTION AND VENUE

1.     This action presents various Constitutional, statutory, and common law

claims arising under the First and Fourteenth Amendments to the United States Constitution, the

Michigan Constitution of 1963, the Civil Rights Act of 1964, Title VII,  42 U.S.C., Section 1983

*et seq.*, the Americans With Disabilities Act of 1990, 42 U.S.C., Section 12111 *et seq.*, the

Health Insurance Portability and Accountability Act, the Whistleblowers Protection Act of

Michigan, MCL 15.361 *et seq.*, the Persons With Disabilities Civil Rights Act of Michigan,

MCL 37.1101 *et seq.*, and the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*  Jurisdiction

is conferred upon this Court, pursuant to 28 U.S.C., Sections 1331 and 1343.  This Court has

supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367.

2.     Plaintiffs' claims for equitable, declaratory, and injunctive relief are

authorized pursuant to 28 U.S.C., Sections 2201 and 2202, 42 U.S.C. Section 1983 *et seq.*, 42

U.S.C. Section 12111 *et seq.*, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the

general legal and equitable powers of this Court.

3.     Pursuant to 42 U.S.C. Section 1983, 42 U.S.C. Section 12111 *et seq.*,

other applicable law, this Court is justified to award nominal, compensatory, and punitive

damages, and equitable relief against Defendant Imad Fadlallah, in his individual capacity,

against Defendant Mosallam, in his individual capacity, against Defendant Alie-Bazzi, in her

individual capacity, against Defendant Whiston, in his individual capacity, against Defendant

2

Rafferty, in his individual capacity, and against the Defendant Dearborn Public Schools for the past and ongoing violations of Plaintiffs' Constitutional rights and the harm caused by his actions.

4.      This Court is justified to award reasonable costs of litigation, including attorneys' fees and expenses, pursuant to the Civil Rights Act of 1964, 42 U.S.C. Section 1983 *et seq.*, 42 U.S.C. Section 12111 *et seq.*, the Whistleblowers Protection Act of Michigan, MCL 15.361 *et seq.*, Persons With Disabilities Civil Rights Act of Michigan, MCL 37.1101 *et seq.*, the Elliott-Larsen Civil Rights Act, and other applicable law.

5.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. Section 1391 because all Defendants reside within this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

6.      Plaintiffs have exhausted all available administrative remedies.  Plaintiffs filed complaints regarding the discrimination alleged herein with the Equal Employment Opportunity Commission ("EEOC") and have obtained "right to sue letters" from the EEOC, attached as Exhibit A.  Plaintiffs received said "right to sue letters" on June 1, 2010.

## PLAINTIFFS

7.  Plaintiff Bryan Purcell (hereinafter referred to as "Purcell) is a teacher who served Dearborn Public Schools for over ten (10) years as an educator.  At all relevant times herein, Plaintiff Purcell was a member of a class of protected persons under 42 U.S.C., Section 1983 *et seq.*, 42 U.S.C., Section 12111 *et seq.*, the Persons With Disabilities Civil Rights Act of Michigan, MCL 37.1101 *et seq.* and the Elliott-Larsen Civil Rights Act of Michigan.

8.  Plaintiff Georgene Stergalas (hereinafter referred to as "Stergalas") is a

teacher who served Dearborn Public Schools for over sixteen (16) years as an educator.  At all

relevant times herein, Plaintiff Stergalas was a member of a class of protected persons under 42

U.S.C., Section 1983, the Whistleblowers Protection Act of Michigan, MCL 15.361 *et seq*., and

the Elliott-Larsen Civil Rights Act of Michigan.

## DEFENDANTS

9.   Defendant Dearborn Public Schools ("DPS") is located in Dearborn,

Michigan.  DPS is a public entity established and organized under the laws of Michigan, with the

authority to sue and be sued in its own name.  DPS is charged with the operation of the public

schools within the district, including Dearborn Fordson High School ("Fordson"), and

promulgates the policies, practices, customs, and usages in furtherance thereof.  At all relevant

times herein, the School District was a "person" acting under the color of state law pursuant to

42 U.S.C. Section 1983 and 42 U.S.C. 12111 *et seq.*, and an "employer" pursuant to the

Whistleblowers Protection Act of Michigan, MCL 15.361 *et seq*., the Persons With Disabilities

Civil Rights Act of Michigan, MCL 37.1101 *et seq*., and the Elliott-Larsen Civil Rights Act of

Michigan.

10. Defendant Imad Fadlallah ("Fadlallah"), was the Principal of Fordson until

the summer of 2010, when he retired from Defendant Dearborn Public Schools.  Defendant

Fadlallah was responsible for creating, adopting, and implementing School District policies,

practices, customs, and usages.  At all relevant times herein until the summer of 2010, for

purposes of the Constitutional claims, Defendant Fadlallah was acting in the scope of his

employment and under color of State law.  Defendant Fadlallah is sued individually and in his

official capacity and in combination and consort with Defendant Dearborn Public Schools.

11. Defendant Youssef Mosallam ("Mosallam"), beginning in the fall of 2010,

4

was the Principal of Fordson and remains at that position.  Defendant Mosallam is responsible for creating, adopting, and implementing School District policies, practices, customs, and usages. At all relevant times herein beginning in the fall of 2010, for purposes of the Constitutional claims, Defendant Mosallam was acting in the scope of his employment and under color of State law.  Defendant Mosallam is sued individually and in his official capacity and in combination and consort with Defendant Dearborn Public Schools.

12. Defendant Maysam Alie-Bazzi ("Alie-Bazzi"), is an Assistant Principal of Fordson and remains at that position.  Defendant Alie-Bazzi is responsible for creating, adopting, and implementing School District policies, practices, customs, and usages.  At all relevant times herein beginning in the fall of 2010, for purposes of the Constitutional claims, Defendant Alie-Bazzi was acting in the scope of her employment and under color of State law.  Defendant Alie-Bazzi is sued individually and in her official capacity and in combination and consort with Defendant Dearborn Public Schools.

13. Defendant Thomas Rafferty ("Rafferty"), at all relevant times herein was the Director of Human Resources and/or a Human Resources Contractor/Consultant for the Dearborn Public Schools and remains in the employ of the Dearborn Public Schools.  Defendant Rafferty was responsible for creating, adopting, and implementing School District policies, practices, customs, and usages.  At all relevant times herein, for purposes of the Constitutional claims, Defendant Rafferty was acting in the scope of his employment and under color of State law.  Defendant Rafferty is sued individually and in his official capacity and in combination and consort with Defendant Dearborn Public Schools.

14. .  Defendant Brian Whiston ("Whiston"), at all relevant times herein

5

beginning in 2008, was the Superintendent and chief officer/official of the Dearborn Public Schools.  Defendant Whiston was responsible for creating, adopting, and implementing School District policies, practices, customs, and usages.  At all relevant times herein, for purposes of the Constitutional claims, Defendant Whiston was acting in the scope of his employment and under color of State law.  Defendant Whiston is sued individually and in his official capacity and in combination and consort with Defendant Dearborn Public Schools.

## COMMON ALLEGATIONS

15. Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

16. Plaintiff Purcell has a Master of Arts degree in teaching and is an award-winning high school science and math teacher at Fordson High School, where he has taught since 2000.  He was a cum laude graduate of Wayne State University, which he attended on a full merit scholarship.  His curriculum, lesson plans, and use of emerging technology were innovative became the model and standard of excellence in the science and math departments.  Plaintiff Purcell was awarded an Educator's Award of Merit by DPS in 2002.  Purcell created the physics course of concept physics for the school district.  He also created the district's astronomy course.  Purcell was also the first teacher at Fordson to use PowerPoint presentations in his classroom teaching and lectures, and he taught other teachers in the school how to use it and employ it in curriculum.  Purcell's teaching skills were so inspiring that he was chosen by Ford Motor Company to appear teaching one of his "labs" in a documentary the corporation made to mark the 75th anniversary of Fordson High School.

17. Plaintiff Stergalas has a Masters degree in business education and is an award-

winning high school business and marketing teacher for DPS.  She taught for many years at

Fordson High School, and began teaching at Dearborn High School in 2009.  She has been a

teacher for DPS since 1995.  Stergalas co-created the marketing education curriculum for the

school district and instituted the DECA marketing association for the school district, which

earned the school district additional funds from the State of Michigan per pupil for instituting

this vocational program.  Stergalas' teaching has garnered numerous awards, and her DPS

students have won numerous state and national awards and scholarships in business and

marketing as a direct result of her teaching.  One of her students won a prestigious $40,000.00

(forty thousand dollar) McKelvey Foundation Entrepreneurial Scholarship for a business he

developed under Stergalas' tutelage. (The McKelvey Foundation was founded and run by the

founder of Monster.com, Andrew McKelvey.)  Stergalas' many teaching awards include

Michigan Marketing Educators Teacher of the Year and the national Occupational and Career

Tech New Teacher of the Year Award.

18. In 2005, Defendant Imad Fadlallah became the principal of Fordson High

School.

19. Fadlallah is a devout Shi'ite Muslim Arab and cousin of the recently deceased

Grand Ayatollah Sheikh Mohammed Hussein Fadlallah, the spiritual leader of the Hezbollah

Islamic terrorist group, who issued the fatwah (Islamic religious decree) for the mass murder of

over 300 U.S. Marines and Embassy officials in the 1983 bombings of Marine Barracks and the

U.S. Embassy in Beirut.  Hezbollah is on the State Department terrorist list and has been

designated by the U.S. Treasury Department as a Specially Designated Global Terrorist Entity.

20. Defendant Fadlallah has a home in a Hezbollah stronghold of South Lebanon,

and his wife, "Susan," is the daughter of Hezbollah-backed Speaker of the Lebanese Parliament, Nabih Berri, who heads the Shi'ite Amal Militia terrorist group that is now a branch of Hezbollah.

21. Both Plaintiffs, Purcell and Stergalas, are of the Christian faith and are not of Arab heritage or descent.  As such, they were minorities within the confines of Fordson.

22. Though Fordson is a publicly-funded high school, upon taking over As principal at Fordson and throughout his six years at the helm thereafter, Defendant Fadlallah used his position to illegally promote Islam, assert organized Islamic religious observances upon students, and to use Islam and Arabic heritage for discriminatory and illegal preferences in hiring, promotions, and disciplinary actions with regard to Fordson employees and teachers.

23. Defendant Fadlallah, since assuming duties as Fordson's principal, has systematically weeded out Christian teachers, coaches, and employees, and has terminated, demoted, or reassigned them because of their Christian beliefs, expressions, and associations, and/or because they are not Muslims or Arabs and/or do not have Muslim beliefs, expressions, and associations.  Defendant Fadlallah acts in this manner because Christian and/or non-Muslim beliefs are inconsistent with his personal Muslim beliefs and has imposed and promoted a form of sharia (Islamic religious law) at school activities.

24. In 2007, for instance, Defendant Fadlallah transferred three non-Muslim employees—a school psychologist and two special education teachers—out of Fordson and replaced them with a Muslim social worker and an Arab special education teacher who is married to a Muslim.  A Christian math teacher, whom Fadlallah wanted out of Fordson, was assigned the worst students behaviorally and academically, in order to drive her out.  A Christian

teacher's assistant was harassed by Defendant Fadlallah, until she left Fordson and moved out of state to avoid the stressful situation.

25. Fordson football players engaged in organized Islamic prayer before football games in violation of the United States Constitution's Establishment Clause and corresponding clauses under Michigan law and the Michigan Constitution, and Mr. Fadlallah canceled the school's prom dance because there was mixed dancing between males and females, and women wore sleeveless gowns, both of which he viewed as violations of Islamic law. The dance was eventually restored under public pressure, but conditions that complied with sharia (Islamic law) were put in place, regarding women's attire and other conditions. Recently, Fordson High School football team practices were moved to the middle of the night, in order to bow to Muslim Ramadan observance. On election day in November 2005, Defendant Fadlallah gave Fordson High School students who campaigned for Muslim and Arab candidates endorsed by the Muslim-dominated Arab-American Political Action Committee ("AAPAC") and against Christian candidates running for office in the City of Dearborn the day off from school and extra credit to do so. Photos show Fordson students at polling places during the school day, holding up a sign provided to him by AAPAC urging voters not to vote for a Christian candidate for office, with giant crosses placed strategically on the sign. For illegally using students to work for Muslim candidates on election day, AAPAC honored Defendant Fadlallah with an award.

26. Defendant Fadlallah's  illegal, unconstitutional imposition of Islam and its religious tenets and observances upon a tax-funded, public high school—in full view and with the full knowledge of Defendant DPS—are relevant to the instant action because they are part and parcel of the discrimination against both non-Muslim Plaintiffs in the instant action and the hostile work environment that Defendant Fadlallah and his agents and immediate subordinates

imposed upon both Plaintiffs in the instant action because they are not Muslim or Arabic and because Plaintiff Stergalas did not abide by Islamic rules regarding Defendant Fadlallah's physical assault and hitting of students and urged a Muslim student to report Fadlallah to authorities.

27. Fadlallah, himself and through his agents and immediate subordinates, repeatedly harassed Plaintiffs and imposed hostile and impossible conditions on Plaintiffs, so that they would leave their employ, and so that Fadlallah could accelerate his pattern of replacing non-Muslim and non-Arabic personnel with Muslim and Arabic staff members.  To date, despite Fadlallah's retirement in June, DPS continues his pattern of pan-Muslim and pan-Arab employment discrimination, replacing Fadlallah and other officials and teachers at the school with more and more Muslim and Arab candidates in hiring and promotions.

23.  A growing pattern of discrimination against non-Muslims and non-Arabs at Fordson is evident and escalating.

24.  Prior to Defendant Fadlallah's employment as principal of Fordson High School in 2005, neither Plaintiff Purcell nor Plaintiff Stergalas ever experienced any problems of harassment, discrimination, or other conditions of a hostile work environment at Fordson High School imposed upon them due to their religious and ethnic background, and—in Plaintiff Purcell's case—due to his disability, as detailed hereinafter.

25.  Because Plaintiff Fadlallah wanted to purge Fordson of non-Muslim and non-Arab teachers and employees, he began looking for ways to harass non-Muslim and non-Arab teachers and other employees to make them leave their positions at Fordson and/or to get them terminated.

26.  Fadlallah began a pattern of microscopically examining attendance records in excruciating, nitpicking detail and using it as a pretext for discipline of non-Muslim and non-Arab teachers.

27.  Fadlallah also scheduled non-Arab and non-Muslim teachers to teach two different courses in two different locations on the Fordson campus at the same time, making it physically impossible to do so.

28.  Fadlallah canceled courses taught by the non-Muslim and non-Arab teachers he wanted eliminated.

29.  Fadlallah assigned the worst students—the most academically unfit and those with the worst behavior and discipline problems—to non-Arab and non-Muslim teachers.

30.  Fadlallah encouraged students to act up and cause problems in the classes of non-Muslim and non-Arab teachers, and he encouraged those students to file false, trumped up complaints against those teachers.

31.  Fadlallah dispatched his cousin, assistant principal Majed Fadlallah, and his other chosen assistant principal, Oussama Beydoun, to constantly monitor non-Arab and non-Muslim teachers' classes and write up negative reports, as a way to intimidate and harass those teachers.

32.  Plaintiff Purcell has and has had, at all relevant times during his employment with DPS, "type one" insulin-dependent diabetes, a condition and disability covered by the Americans With Disabilities Act of 1990, 42 U.S.C. 12111 *et seq*.

33.  Plaintiff Purcell is required to eat, as well as administer medication, at very specific times or he will go into shock, a disability of which Defendants Fadlallah and DPS were aware at all times during Plaintiff Purcell's employ.

34. Defendant Fadlallah decided to use Plaintiff Purcell's disability as a way to squeeze him out of Fordson, and it was made clear that this was being done because Defendant Fadlallah wanted to replace most non-Muslim and non-Arab teachers with Muslims and Arabs.

35. To that end, Defendant Fadlallah began scheduling classes at the specific times during which Purcell must eat and administer medication for his disability.  Fadlallah also began refusing to allow Purcell to take even a brief break during parent-teacher conferences to eat food and administer medication.

36. Despite Defendants Fadlallah and DPS' longtime knowledge of Purcell's disability and repeated doctors' notes, they began constantly requesting new doctors' notes and repeatedly harassing Purcell about his condition, expressing doubts that he actually has the disability.

37. Then, despite expressing doubts over Purcell's disability, in June 2009, Defendants and their security escorted Plaintiff Purcell from the Fordson building during the time he was administering final exams and told him he was not to set foot on the DPS campus.  This was designed to embarrass Plaintiff Purcell in front of his students in the middle of taking Purcell's final exam.

38. Thereafter, Purcell's union representative was told by Defendant DPS' then-human resources director that Purcell was removed from the Fordson campus because "we are worried about his health."  Purcell was not allowed to return to the Fordson campus or resume teaching, nor was he informed of his status or plans for the fall, until the last minute, by design, at which point, a new doctors' note was demanded by Defendants' then-human resource director, who stated he needed a letter stating that Plaintiff Purcell was physically and mentally healthy enough to perform his job duties.

39.  Purcell repeatedly provided new doctors' notes specifying when Purcell needed his breaks for food and medication to attend to his disability.  Medical professionals treating Purcell were aghast at the level of harassment in the demands for details in the doctors' notes.  But they complied.

40.  That was not enough, however.  Despite those new notes, Defendants continued to harass Purcell and schedule his classes during those times, refusing his request to schedule his lunch and preparation hours when he had previously taken them to accommodate his disability.  Defendants and Defendants' attorney argued over which hour constituted "mid-day," as specified in one doctors' note, demanding a specific time to the minute from the doctor.

41.  Defendant Fadlallah repeatedly harassed Plaintiff Purcell over attendance records.  If Purcell marked someone absent whom Fadlallah wanted to have a good attendance record despite not showing up, Purcell received e-mails regarding this.  If he marked someone present, Fadlallah found a way to complain that the student was absent.

42.  Fadlallah repeatedly assigned assistant principals Majid Fadlallah (Defendant Imad Fadlallah's cousin) and Oussama Beydoun to sit in on and monitor Purcell's courses and fabricate problems that did not exist in order to create negative reports for Purcell's employment file.

43.  Fadlallah purposely assigned Purcell to teach courses for which he was not trained and canceled the courses which Purcell specifically taught.

44.  Fadlallah repeatedly assigned Purcell the worst students in terms of academic and behavior problems, then wrote Purcell up when there were problems of violence in the classroom and Purcell reported them to the principal's office.  Purcell was then repeatedly cited for the poor academic performance of the utter and complete rejects and failures he was assigned to teach,

most of whom did not have the basic knowledge to learn, much less complete, the material in his courses to begin with.

45.   Purcell taught "labs" and used the latest in technology to give his lectures and make them relevant.  Despite that, Fadlallah ordered assistant principals to write up negative reports claiming Purcell didn't do these things.

46.   Purcell learned that a set of negative reports written by students against Purcell contained identical language because they were specifically solicited by Fadlallah.  Fadlallah rewarded students for writing these negative reports, and he encouraged students to act up in Purcell's classroom.

47.   Fadlallah repeatedly held trumped up "star chamber" disciplinary hearings against Purcell, harassing him and making false allegations—each time for the purpose of escalating the "phase" status of defendant Purcell with the goal of escalating him to termination "phase" status. This put Purcell into status which prevented him from transferring to another school district or another school within DPS, which Fadlallah knew Purcell wanted to do.  All of the negative "phase" status information is noted in Purcell's DPS employee file.

48.   Upon information and belief, assistant principal Beydoun telephoned one of Purcell's female students and pressured her to have an inappropriate relationship with Beydoun, while also pressuring the young student to lie and fabricate negative stories about Purcell.

59.   The harassment and hostile work environment for Purcell was so stressful that his diabetic condition got markedly worse and his health declined noticeably.  His doctor told him not to work in such an environment because it risked his health.  Ultimately, Plaintiff Purcell was forced to take medical leave to attend to this condition caused by the harassment of Defendants Fadlallah and DPS.  Purcell continues on said sick leave at the time of the filing of this

Complaint, but Defendants' disabilities- and religion/ethnicity-based persecution campaign against him continues.

50.  In the spring of 2008, Plaintiff Stergalas was told by one of her students that he was physically assaulted by Defendant Fadlallah.  It was the first of two such attacks by Fadlallah on the student.

51.  The student asked Stergalas for advice on the matter, and she advised him to report it to authorities immediately.  Following her advice, the student, an Arab Muslim reported Fadlallah to authorities and planned to publicly expose the matter at a Dearborn Public Schools Board of Education meeting in May 2008.

52.  However, the student and his family were pressured by Fadlallah and the Islamic community to recant his story and remain silent.  In addition, then-DPS Superintendent John Artis helped quell all legitimate investigation of the matter.  Upon information and belief, as a reward for this, Artis was invited to vacation at Defendant Fadlallah's home in the Hezbollah stronghold of South Lebanon.  Additionally, in exchange for ignoring the matter, Artis was rewarded with a plumb post-retirement job at the Arab Community Center for Economic and Social Services (ACCESS), a Muslim-dominated Arab welfare agency.

53.  Thereafter, Stergalas was harassed by Muslim and/or Arab employees and students at Fordson who were acting at the behest of Fadlallah.  Stergalas was told by said students and employees that, "The Islamic community does not appreciate what you did, and we will rally around our own, including Imad Fadlallah, no matter what.  You will pay."

54.  Thereafter, Stergalas was repeatedly harassed by Defendant Fadlallah and his staff, acting as his agents to harass her, when he did not do so, himself.

55.  Like most teachers at Fordson, Stergalas had a phone in her classroom for emergency purposes.  Imad Fadlallah ordered the phone removed.

56.  Defendant Fadlallah assigned two Fordson secretaries to monitor Stergalas' attendance records in painstaking detail as a pretext for harassment and Fadlallah monitored her classes.  During one such monitoring session, as she tried to teach two classes at once, Defendant Fadlallah asked Stergalas how many students there were in her classroom and where they would sit.  She replied that the students sit wherever they can, including on the floor because there aren't enough chairs.  Defendant Fadlallah told Stergalas—in front of all of her students, so as to embarrass her and undermine her classroom authority—"I have a solution to that problem:  get rid of the teacher!"  Fadlallah began canceling the courses that Stergalas taught, so that she'd be out of a job.

57. The harassment of Plaintiff Stergalas was so intense and unbearable that she was forced to take sick leave and consult a psychiatrist.

58.  Defendant Fadlallah released details of Stergalas' sick leave and her care with a psychiatrist to several third parties, as well as other private information in Stergalas' file.

59.  Defendant Fadlallah released details of Stergalas' medical care with a Muslim Arab school social worker and gave the social worker Stergalas' private cell phone number, ordering the social worker to contact, harass, and pressure Stergalas to meet with Defendant Fadlallah.  The social worker contacted Stergalas and her Stergalas' children on several occasions and discussed her medical records and details of her care and sick leave with them.  The social worker repeatedly called, despite being told her contact was not wanted.

60.  Stergalas was afraid to return to work and could not bear the non-stop harassment.  However, Defendant DPS would not grant Stergalas additional sick leave, despite directives

from her medical care professional that it was medically necessary that she not work in such a hostile environment.

61.   Thereafter, after repeated requests, Defendant DPS finally allowed Stergalas to teach at a different school, within the DPS district.  But the transfer was sudden and not voluntary.

62.   However, Defendant Fadlallah released information from Plaintiff's medical records and conducted a whispering campaign of lies and innuendo, designed to poison the well and continue the harassment at her new place of employment, Dearborn High School.

63.   Defendant Fadlallah assigned Stergalas two classes at opposite ends of the Fordson campus at the same time, making it impossible to teach both classes simultaneously.

64.   Defendant Fadlallah assigned Stergalas students with the most severe behavioral and academic problems.

65.   To date, the harassment campaign continues, with students constantly confronting her with false details spread about her by Defendant Fadlallah that she is an "infidel troublemaker."  The whisper campaign has been conducted with the full participation of Defendant DPS which fostered this environment and looked the other way despite specific complaints to DPS regarding the public disclosure of this private information.

66.   Both Plaintiffs filed grievances with their teachers' union over the continuing harassment, and the result over time was more and more retaliation against Plaintiffs.

67.   Defendants discriminated against other Christian and non-Muslim, non Arab teachers and DPS personnel who had first-hand knowledge of Fadlallah's behavior, including his physical assault on said student, replacing said employees with Muslims.  A frequent Fordson substitute teacher witnessed Defendant Fadlallah assaulting the same student in question a second time.  He was banned from ever teaching at Fordson again, and he was replaced by Defendant Fadlallah's

17

relative.  A female math teacher who is neither Muslim nor of Arab heritage was assigned the worst students at Fordson academically and behavior-wise.

68.  The hostile work environment created by Defendant Fadlallah is documented in a 2008 report by an independent organization, the Michigan Leadership Institute.  The report, "Dearborn Public Schools:  High School Operations Review Team – Final Report, December 2008," was commissioned by the Wayne County Regional Education Service Agency. Regarding Fadlallah, the section of the report on Fordson High School states,

> The dynamics at Fordson are complicated at best.  For many staff, a culture of fear and uncertainty exists, and for them, we believe the work environment at Fordson has been in the recent past, and remains now, very hostile. . . .  We believe that some staff has interpreted the Principal's passion as anger—others do see this as a problem area or even a concern.

*Dearborn Public Schools:  High School Operations Review Team – Final Report, December 2008, The Michigan Leadership Institute, Dr. Michael Wilmot, Regional President, Dr. William Weber, Consultant, Michael Fenchel, Consultant*.  The report is a damning condemnation of the behavior of Defendant Fadlallah and the atmosphere under which Plaintiffs were employed.  The report also notes the significant academic "under-perform[ance]" at Fordson and the fact that the school "has struggled to demonstrate student achievement even at the most basic level."  *Ibid*. No doubt that is in no small part due to Defendant Fadlallah's harassment of award-winning, skilled non-Muslim, non-Arabic teachers, such as Plaintiffs.

69. DPS was aware of this damning report and of Fadlallah's repeated pattern of harassment, discrimination, and retaliation based on religion and ethnic heritage, as well as Plaintiff Purcell's illness.  And, yet, DPS looked the other way and did nothing to address the issues identified in the independent report and/or in the repeated complaints filed with DPS by Plaintiffs.

70. DPS is also aware of the outlaw behavior of Defendant Fadlallah and looked the other way.  A report found that Fadlallah pressured teachers to change and inflate grades for many underperforming students, so that Fadlallah could artificially improve his school's graduation rate.

71. This pattern of religion- and ethnic-based harassment repeatedly occurs and is tolerated in Defendant DPS' school district.

72. In 2009, former Fordson wrestling coach Gerald Marszalek, a Christian, filed suit in this Court because he and a Christian assistant wrestling coach were ordered not to exercise their free speech rights about their religion, and they were then fired by Fadlallah. *Gerald Marszalek v. Imad Fadlallah and Dearborn Public Schools, U.S. District Court for the Eastern District of Michigan, Case No. 09-12955.*

73. In 2003, Gulala Abraham, a Kurdish woman, also filed suit in this Court because she was denied a promotion because she was an ethnic and religious Kurd.  In retaliation for her complaint about the discrimination, Ms. Abraham was assigned an excessive amount of students who were academic and behavioral problems, just like the current retaliation with the Plaintiffs in the instant action. *Gulala Abraham v. Dearborn Public Schools, U.S. District Court for the Eastern District of Michigan, Case No. 03-75065.*

74.  At all times relevant herein, Defendants Whiston and Rafferty were aware of Defendant Fadlallah's improper, illegal, and discriminatory behavior and went along with it.  Not only did they do nothing to stop it, but they participated in sanctioning the harassment of Plaintiffs and other Dearborn Public Schools employees.  And they participated in and sanctioned retaliation and escalated harassment against Plaintiff Purcell in response to his filing

of complaints against the Dearborn Public Schools and Defendant Fadlallah with federal authorities and in federal court in the instant action.

75. After Defendants filed a complaint with the United States Equal Employment Opportunities Commission (EEOC) in 2009 and filed the initial Complaint in the instant action in 2010, Defendants stepped up the harassment against Defendant Purcell, in retaliation for his filing said complaints. This included excessive, stepped up monitoring and numerous, nitpicking write-ups and harassment of his classroom, attendance records, and attendance and breaks at parent-teacher conferences—all of these conducted by various DPS officials and employees. Further, Defendant Purcell was subject to escalating, repeated hearings and harassing letters from Defendant Rafferty regarding Plaintiff Purcell's health condition. At the end of the 2010 academic school year, Defendants Rafferty and Fadlallah had security guards usher Plaintiff Purcell off the Fordson premises with security guards, without explanation to Purcell. This was done in front of Purcell's students while he was administering a final exam, and thereafter, Plaintiff Purcell was told by his union representative, Christine Sipperly, that Defendant Rafferty said this was because of concerns about Purcell's health. Before he was allowed to return for the 2010-11 school year and thereafter, Defendant Rafferty and DPS legal representatives made several requests for more and more detailed notes from Plaintiff Purcell's treating health professionals. All of this was in retaliation for the complaints to federal authorities and the Complaint filed in the instant action.

76. After Defendant Purcell returned to work under new Fordson Principal and Defendant Mosallam and Assistant Principal Alie-Bazzi, Defendant Mosallam, himself and through his agents and immediate subordinates, including Defendant Alie-Bazzi, repeatedly

harassed Plaintiff Purcell and imposed hostile and impossible conditions on Plaintiff Purcell, so that he would leave Fordson's and Defendant DPS' employ.

77. Defendants Mosallam and Alie-Bazzi helped Defendant DPS carry out retaliation against Plaintiff Purcell in several ways, including denying him a room without air conditioning despite a doctor's note requesting otherwise, excessive observations by school officials, numerous nitpicking write-ups against Purcell, assigning Purcell an unusually high concentration of disciplinary, behavior, and academic problem students (including students who repeatedly fail), and encouragement by school officials that students harass Plaintiff Purcell and misbehave in his class. Defendant Mosallam and his subordinate officials, at his direction, including Defendant Alie-Bazzi, refused to discipline violent and behavioral problem students (including those brandishing weapons and engaged in problems such as "cutting"), and returned them to his classroom, encouraging them to act out, to leave the classroom, and to make complaints against Plaintiff Purcell. Plaintiff Purcell was denied basic equipment including calculators, and he is assigned math classes that he does not usually teach, despite several courses available in his primary area of expertise, physics, for which he designed the course for Defendant school district. At the request of Mosallam and Alie-Bazzi, a Dearborn Police Department officer was posted seated at the front of Plaintiff Purcell's classroom, without explanation, for the obvious purpose of harassing, embarrassing, and intimidating Plaintiff Purcell. All of this went on with the knowledge, approval, and sanction of Defendants Whiston, Rafferty, and DPS.

78. The conditions became so bad that Defendant Purcell had to take repeated, extended sick leave because of extreme stress on the job that affected his health condition.

79. Upon Defendant Purcell's return from sick leave in 2011, he was immediately treated to step up monitoring and harassment, as well as a hearing regarding trumped-up matters—all of

this at the hands of Defendants Mosallam, Alie-Bazzi, Rafferty, Whiston, and DPS.  As noted herein, *supra*, Defendants Mosallam and Alie-Bazzi encouraged students to misbehave in Purcell's classroom, to leave the classroom, and to make complaints against him.  They also refused to discipline students who were stark behavioral problems and who brought weapons to class.  In March 2011, without any explanation, Plaintiff Purcell was asked by Defendants to leave the premises and was not allowed back on campus to date.  All of this went on with the knowledge, approval, and sanction of Defendants Whiston, Rafferty, and DPS.

80.  In its final act of retaliation against Plaintiff Purcell, in May 2011, Defendants Whiston, Mosallam, and DPS submitted charges against Plaintiff Purcell to its governing school board and asked it to terminate Purcell.  The charges were the same trumped up claims made against him previously in retaliation for his federal complaints.  Defendant DPS' school board voted to terminate Plaintiff Purcell under the Michigan Tenure Act, and he has appealed said termination.

81.  The growing pattern of discrimination against non-Muslims and non-Arabs at Fordson that was evident and escalating under Defendant Fadlallah, continues and expands under Defendant Mosallam, with the full sanction of Defendants Whiston, Rafferty, and DPS.

82.  Defendant DPS' disciplinary and administrative policy and practices grant unbridled discretion to Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, and school officials in the censorship of religious beliefs, expression, and associations because they provide no guidelines or standards for their enforcement or the application of their terms permitting enforcement by Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, based upon subjective determinations as to which religious beliefs, expression, and associations are acceptable and which are not.

83.  Defendants DPS, Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's, actions have had a chilling effect and placed a substantial burden on Plaintiffs' rights to freely exercise their religion, express themselves, engage in expressive association, in violation of the United States and Michigan Constitutions.  Thereby, Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston have restricted Plaintiffs' religious exercise, expression, and expressive association in violation of the United States and Michigan Constitutions.

84. Defendant DPS' disciplinary and administrative policy and practices grant unbridled discretion to Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, Whiston, and school officials, allowing them to harass employees with disabilities and prevent them from reasonable accommodation and treatment.

85. Defendant DPS' disciplinary and administrative policy and practices grant unbridled discretion to Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, Whiston, and school officials, allowing them to harass employees who act as whistleblowers by encouraging assaulted students to report crimes and wrongdoing by school officials to authorities.

86. Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's, actions violated Equal Protection, Due Process, and other applicable law.

87. Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's, actions harassing Plaintiffs and attempting to terminate their employment were done without Due Process of law.

88. Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and

23

Whiston's actions, treatment, and discrimination against Plaintiffs were done in retaliation for their religious beliefs, expression, and their association.

89. Defendant Fadlallah has publicly stated he "sees Dearborn Fordson High School as a Muslim school, both in students and faculty, and is working to that end," and other words expressing that sentiment.  That is why he used Plaintiff Purcell's disability and Plaintiff Stergalas' status as a whistleblower encouraging her student to report his wrongdoing, as pretext to harass respective Plaintiffs and weed them out of Fordson.

90. Plaintiffs are two teachers with impeccable skills, credentials, and numerous awards to their names.  They were harassed because they are Christians, because they are not Muslims, because they are not Arabs, because of their expression, and because of their associations.  Defendant DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's, outrageous actions outlined herein constitute an affront to justice and Plaintiffs must be vindicated.

91. Defendant Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston have engaged in a pattern of practice of improper, illegal, and unconstitutional conduct as set forth herein in violation of the Constitutional rights of citizens, and in each instance have involved one of the following acts:  disciplining and harassing employees because of religious beliefs and disabilities, violating rights of freedom of expression, freedom of association, equal protection and due process, promoting religious beliefs of one religion over the other, and retaliation for reporting and filing complaints about those acts to governmental authorities.

92. The pattern and practice of Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, in their conduct as set forth above is widespread and well known in the community, yet the Defendant DPS did nothing to stop these practices.  Plaintiffs had a right to

2:10-cv-13444-RHC-MJH   Doc # 27   Filed 10/05/11   Pg 25 of 41   Pg ID 344

be protected from intentional and wrongful conduct by Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, which resulted in injuries to Plaintiffs and violated Plaintiffs' civil rights.

93. Defendants had a duty to Plaintiffs under the United States Constitution and the Federal Civil Rights Laws, specifically including 42 U.S.C. Section 1983 *et seq.*, 42 U.S.C. 12111 *et seq.*, 42 U.S.C. Section 2000e-3(a), and the 4th, 5th, and 14th Amendments to the United States Constitution as well as applicable sections of the Michigan Constitution, to refrain from acting or failing to act so as to violate Plaintiffs' civil rights.

94. Each of the Defendants breached its duties to the Plaintiffs and violated Plaintiffs' civil rights by their actions and omissions and failures to act as pleaded herein, and further, Defendants had both the duty and the power to prevent or aid in the prevention of the commission of said wrongful acts against the Plaintiff and prevent the violation of Plaintiff's civil and Constitutional rights, but neglected and refused to do so.

95. It was the policy, practice, custom, and usage of Defendant DPS to encourage, tolerate, acquiesce, and ratify violations of the civil rights of persons by conduct and inactions which were grossly negligent and/or deliberately indifferent to the civil rights of persons and Constitutional violations committed by Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, and adopting, ratifying or implementing such policy, practice, custom, or usage, and which conduct and inactions include, but are not limited to:

    a)  the Defendant DPS' failure to correct unconstitutional conditions and practices;

    b)  failure to adequately and properly investigate the employment history, background and fitness of Defendant principal Fadlallah;

c) failure to take disciplinary action against Defendant principal Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston for their violations of employees' civil rights and whistleblower status;

d) retaliating against Plaintiffs for filing complaints with the U.S. Equal Employment Opportunities Commission and the Complaint in the instant action; and

e) allowing a pervasive and established pattern of Constitutional as well as statutory violations to become de facto policy by failing to take action against same or prevent same.

96. As a direct and proximate result of Defendants DPS', Fadallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's, unlawful actions, Plaintiffs have sustained injuries and damages including but not limited to loss of sick days/vacation time, loss of career opportunities, potential loss of earnings and earning capacity, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the infringement upon the right to pursue gainful occupation of choice, and incurred substantial liability for attorney fees.

97. The policy, practice, custom, and usage of Defendant DPS and its conduct and inactions, was a proximate cause of the violations of Plaintiffs' civil rights and of the injuries and damages to the Plaintiffs set forth herein.

98. Plaintiffs had a right to be protected from the wrongful conduct by Defendant DPS which conduct resulted in injuries and damages to the Plaintiff as set forth herein.

**FIRST CLAIM FOR RELIEF**
**Free Exercise—First Amendment**
**(42 U.S.C. Section 1983)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

91. Plaintiffs re-allege and incorporate by reference all prior paragraphs in this

Complaint as though repeated herein.

92. By reason of the aforementioned policy, practice, custom, and usage, acts and omissions, engaged in under color of State law, Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston have deprived Plaintiffs of their right to religious exercise in violation of the Free Exercise Clause of the First Amendment as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983.

93. Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston further violated Plaintiffs' right to religious exercise by targeting Plaintiffs for discriminatory and arbitrary enforcement of its policies, practices, customs and usage on account of Plaintiffs' religious practices and beliefs.

94. As a direct and proximate result of Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's violations of the Free Exercise Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including loss of their Constitutional rights, entitling them to declaratory and injunctive relief and damages as set forth in the common allegations of this Complaint.

**SECOND CLAIM FOR RELIEF**
**Freedom of Speech—First Amendment**
**(42 U.S.C. Section 1983)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

95. Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

96. By reason of the aforementioned policy, practice, custom, and usage, acts and omissions, engaged in under color of State law, Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston have deprived Plaintiffs of their right to religious expression in

violation of the Free Speech Clause of the First Amendment as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983.

97.  As a direct and proximate result of Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's violations of the First Amendment, Plaintiffs have suffered irreparable harm, including loss of their Constitutional rights, entitling them to declaratory and injunctive relief and damages as set forth in the common allegations of this Complaint.

### THIRD CLAIM FOR RELIEF
### Freedom of Expressive Association—First Amendment
### (42 U.S.C. Section 1983)
### (Defendant DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)

98.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

99.  By reason of the aforementioned policy, practice, custom, and usage, acts and omissions, engaged in under color of State law, Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston have deprived Plaintiffs of their right to expressive association guaranteed by the First Amendment as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983.

100.  As a direct and proximate result of Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's and Whiston's violations of the First Amendment, Plaintiffs have suffered irreparable harm, including loss of their Constitutional rights, entitling them to declaratory and injunctive relief and damages as set forth in the common allegations of this Complaint.

### FOURTH CLAIM FOR RELIEF

**Equal Protection—Fourteenth Amendment**
**(42 U.S.C. Section 1983)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

101.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this

Complaint as though repeated herein.

102.  By reason of the aforementioned policy, practice, custom, and usage, acts

And omissions, engaged in under color of State law, Defendants DPS, Fadlallah, Mosallam,

Alie-Bazzi, Rafferty, and Whiston have deprived Plaintiffs of  the equal protection of the law

guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution and 42 U.S.C. Section 1983 by discriminating against Plaintiffs in the application of

their acts, policies, practices, custom, and usage, and omissions on account of Plaintiffs exercise

of their religion, speech, and associations, thereby treating Plaintiffs on less than equal terms.

Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston targeted Plaintiffs for

discriminatory and arbitrary treatment on account of Plaintiffs' religion, speech, and

associations, thereby infringing upon Plaintiffs fundamental rights.  Defendants DPS, Fadlallah,

Mosallam, Alie-Bazzi, Rafferty, and Whiston have treated Plaintiffs differently than other

similarly situated individuals based upon their religion, expression, and association, thereby

infringing on Plaintiffs' fundamental rights.

103.  As a direct and proximate result of Defendants DPS', Fadlallah's, Mosallam's,

Alie-Bazzi's, Rafferty's, and Whiston's violations of the Equal Protection Clause of the

Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including loss of their

Constitutional rights, entitling them to declaratory and injunctive relief and damages as set forth

in the common allegations of this Complaint.

**FIFTH CLAIM FOR RELIEF**
**Equal Protection—Fourteenth Amendment**

**(42 U.S.C. Section 1983)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

104.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

105.  As a direct and proximate result of the aforementioned policy, practice, custom, and usage, acts and omissions, engaged in under color of State law, Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston have violated Plaintiffs' clearly established Due Process rights  guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983, in that Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's polices are vague, overbroad, and lack sufficient standards and safeguards to curtail the discretion of school officials, thereby allowing Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston unbridled discretion to enforce and apply said policies in an *ad hoc* and discriminatory manner.

106.  Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, municipal actors, caused in fact to be publicly disseminated false, defamatory, and stigmatizing information about Plaintiffs, absent notice and a legitimate opportunity to be heard, in violation of their liberty interests and in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

107.  As a direct and proximate result of Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's violations of the Due Process Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including loss of their Constitutional rights, entitling them to declaratory and injunctive relief and damages as set forth in the common allegations of this Complaint.

**SIXTH CLAIM FOR RELIEF**

**Establishment Clause—First Amendment**
**(42 U.S.C. Section 1983)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

108.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

109.  By reason of the aforementioned policy, practice, custom, and usage, acts And omissions, engaged in under color of State law, Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston preferred one religion over another, depriving Plaintiffs of their rights of religious freedom in violation of the Establishment Clause of the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the 14th Amendment to the United States Constitution and 42 U.S.C. Section 1983.

110.  Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston further violated Plaintiffs' rights to religious exercise and freedom of religion and enforcement of its policies, practices, custom and usage on account of Plaintiff's religious practice and beliefs.

111.   As a direct and proximate result of Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's violations of the Establishment Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including loss of their Constitutional rights, entitling them to declaratory and injunctive relief and damages as set forth in the common allegations of this Complaint.

**SEVENTH CLAIM FOR RELIEF**
**Americans With Disabilities Act of 1990**
**(42 U.S.C. Section 12111 *et seq.*)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

112.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

31

113.  By reason of the aforementioned policy, practice, custom, and usage, acts

And omissions, engaged in under color of State law, Defendants DPS, Fadlallah, Mosallam,

Alie-Bazzi, Rafferty, and Whiston have deprived Plaintiff Purcell of  reasonable accommodation

of and freedom of discrimination against a disability guaranteed under the Americans With

Disabilities Act of 1990, 42 U.S.C. Section 12111 *et seq.* by discriminating against Plaintiff

Purcell in the application of their acts, policies, practices, custom, and usage, and omissions on

account of Plaintiffs disability, thereby treating Plaintiff Purcell on less than equal terms.

Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston targeted Plaintiffs for

discriminatory and arbitrary treatment on account of Plaintiffs' Purcell's disability, thereby

infringing upon Plaintiff Purcell's fundamental rights.  Defendants DPS, Fadlallah, Mosallam,

Alie-Bazzi, Rafferty, and Whiston have treated Plaintiffs differently than other similarly situated

individuals based upon his disability, thereby infringing on Plaintiff Purcell's fundamental rights.

114.  As a direct and proximate result of Defendants DPS', Fadlallah's,

Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's violations of the Americans With

Disabilities Act of 1990, Plaintiff Purcell has suffered irreparable harm, including loss of his

Constitutional rights, entitling them to declaratory and injunctive relief and damages as set forth

in the common allegations of this Complaint.

### EIGHTH CLAIM FOR RELIEF
**Religious Discrimination/Equal Protection—Michigan Constitution**
**(Mich. Const. 1963, Article 1, Section 2)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

115.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this

Complaint as though repeated herein.

116.  By reason of the aforementioned policy, practice, custom, and usage, acts

And omissions, engaged in under color of State law, Defendants DPS, Fadlallah, Mosallam,

Alie-Bazzi,  Rafferty, and Whiston have discriminated against Plaintiffs on account of their

religion and have denied Plaintiffs the equal protection of the laws on account of their religion

and religious practices in violation of Article 1, Section 2 of the Michigan Constitution.

117.  As a direct and proximate result of Defendants DPS', Fadlallah's,

Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's violations of the Michigan Constitution,

Plaintiffs have suffered irreparable harm, including loss of their Constitutional rights, entitling

them to declaratory and injunctive relief and damages as set forth in the common allegations of

this Complaint.


### NINTH CLAIM FOR RELIEF
### Elliott-Larsen Civil Rights Act
### (MCL 37.2101 et seq.)
### (Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)

118.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this

Complaint as though repeated herein.

119.  At all relevant times, Plaintiffs and Defendants were covered by and within

the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

120.  Plaintiffs' religious beliefs, expressions, and associations were factors that

made a difference in Defendants' decision to subject them to wrongful and discriminatory

treatment as described herein.

121.  Defendant DPS, through its agents, representatives, and employees,

specifically including but not limited to Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty,

and Whiston, treated Plaintiffs differently from similarly situated Muslim employees and those

33

not associated with Christians, based on unlawful consideration of religion, expression, and free associations.

122.  Defendants actions were intentional, with reckless indifference and in disregard of Plaintiffs' rights and sensibilities.

123.  As a direct and proximate result of Defendants' DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

### TENTH CLAIM FOR RELIEF
**Persons With Disabilities Civil Rights Act**
**(MCL 37.1101 et seq.)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

124.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

125.  At all relevant times, Plaintiffs and Defendants were covered by and within the meaning of the Michigan Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq*.

126. Plaintiff Purcell's disability caused him to be subject to Defendants' wrongful and discriminatory treatment as described herein.

127.  Defendant DPS, through its agents, representatives, and employees, specifically including but not limited to Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, harassed Plaintiff Purcell because of his disability and discriminated against him based on said disability.

128.  Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff Purcell's rights and sensibilities.

129.  As a direct and proximate result of Defendants' unlawful actions, Plaintiff Purcell sustained injuries and damages including, but not limited to, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**ELEVENTH CLAIM FOR RELIEF**
**Whistleblowers' Protection Act**
**(MCL 15.361 et seq.)**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston)**

130.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

131.  At all relevant times, Plaintiffs and Defendants were covered by and within the meaning of the Michigan Whistleblowers' Protection Act, MCL 37.1101 *et seq*.

132.  By counseling the student who was physically assaulted by Defendant Fadlallah in violation of Michigan law to report the abuse, Plaintiff Stergalas was acting as a whistleblower and a whistleblower by proxy.

133.  Plaintiff Stergalas' whistleblower status caused her to be subject to Defendants' wrongful and discriminatory treatment as described herein.

134.  By reporting Defendants' harassment of Plaintiffs to the United States Equal Employment Opportunities Commission and by filing the initial Complaint in the instant action, Plaintiffs were whistleblowers covered by and within the meaning of the Michigan Whistleblowers' Protection Act, MCL 37.1101 *et seq*.

134.  Defendant DPS, through its agents, representatives, and employees, specifically including but not limited to Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, harassed Plaintiffs because of their status as whistleblowers and discriminated against them on that basis.

135.  Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiffs' rights and sensibilities.

136. As a direct and proximate result of Defendants' unlawful actions, Plaintiffs sustained injuries and damages including, but not limited to, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

### TWELFTH CLAIM FOR RELIEF
### Right to Privacy – Common Law and HIPAA
### (Defendants DPS and Fadlallah - Plaintiff Stergalas)

137.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

138.  At all relevant times, Plaintiffs and Defendants were covered by Common law regarding the right to privacy.  The Health Insurance Portability and Accountability Act also requires privacy of medical records and provides criminal penalties for violators.  42 U.S.C. § 1320d-6 *et seq*.

139. Because she counseled the student who was physically assaulted by Defendant Fadlallah in violation of Michigan law to report the abuse, Defendant Fadlallah chose to wrongfully disclose her medical information and private cell phone number to third parties

without her knowledge or consent, subjecting her to additional harassment by his agents and representatives to whom he unlawfully disclosed said confidential information.

140.  Defendant disclosure of Plaintiff Stergalas' private information constituted an invasion of privacy as defined by common law.

141.  Defendant Fadlallah's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

142.  As a direct and proximate result of Defendant Fadlallah's unlawful actions, Defendant Stergalas sustained injuries and damages including, but not limited to, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**THIRTEENTH CLAIM FOR RELIEF**
**Retaliation – Civil Rights Act**
**(42 U.S.C. Section 2000e – 3(a))**
**(Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston – Plaintiff Purcell)**

143.  Plaintiffs re-allege and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

144.  At all relevant times, Plaintiffs and Defendants were covered by 42 U.S.C. § 2000e-3(a) because they reported Defendants' civil rights violations in complaints with the United States Equal Employment Opportunities Commission in 2009 and filed the instant action in 2010.

145.  Defendant DPS, through its agents, representatives, and employees,

specifically including but not limited to Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, harassed Plaintiff Purcell because he filed complaints with the EEOC and in federal court and discriminated against him on that basis.

146.  Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiffs' rights and sensibilities.

147.  By retaliating against Plaintiff Purcell after he filed a complaint with the United States Equal Opportunities Commission and, in the instant action, filed the Complaint, Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston violated and deprived Plaintiff Purcell of his right, pursuant to 42 U.S.C. Section 2000e-3(a), to report Defendants' discriminatory and arbitrary enforcement of  policies, practices, customs and usage on account of Plaintiff Purcell's religious practices and beliefs, ethnic status, and disability.

148.  As a direct and proximate result of Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's unlawful actions of retaliation in violation of 42 U.S.C. Section 2000e-3(a), Plaintiff Purcell has suffered irreparable harm and sustained damages and injuries, including loss of his Constitutional rights, entitling him to declaratory and injunctive relief and damages including, but not limited to, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)  enter judgment declaring that Defendants DPS, Fadlallah, Mosallam, Alie-

Bazzi, Rafferty, and Whiston violated the United States Constitution as set forth in this Complaint;

(b)  enter judgment declaring that Defendants DPS, Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston violated the Michigan Constitution of 1963 as set forth in this Complaint;

(c)  enter judgment declaring that Defendants DPS', Fadlallah's, Mosallam's, Alie-Bazzi's, Rafferty's, and Whiston's policies applied to Plaintiffs as outlined herein are unconstitutional on their face and unconstitutional as applied to Plaintiffs;

(d)  enjoin Defendant DPS, its employees, agents, and successors in office, including but not limited to Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, from formulating, adopting, implementing, and/or enforcing or threatening to enforce any act, policy, custom and usage, law, and/or decision having the effect of unlawfully preventing Plaintiffs from exercising their Constitutional rights to freely exercise their religion, freedom of speech, and freedom of expressive association guaranteed under the United States and Michigan Constitutions;

(e)  enjoin Defendant DPS, its employees, agents, and successors in office, including but not limited to Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, from formulating, adopting, implementing, and/or enforcing or threatening to enforce any act, policy, custom and usage, law, and/or decision having the effect of unlawfully preventing Plaintiff Purcell from exercising his Constitutional rights to freedom from disabilities-based discrimination guaranteed under the federal and Michigan statutes;

(f)   enjoin Defendant DPS, its employees, agents, and successors in office,

including but not limited to Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, from formulating, adopting, implementing, and/or enforcing or threatening to enforce any act, policy, custom and usage, law, and/or decision having the effect of unlawfully preventing Plaintiffs from exercising their Constitutional rights to act as whistleblowers against criminal activity and wrongdoing, as guaranteed under Michigan statutes;

(g)   enjoin Defendant DPS, its employees, agents, and successors in office, including but not limited to Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston, from formulating, adopting, implementing, and/or enforcing or threatening to enforce any act, policy, custom and usage, law, and/or decision having the effect of retaliation and unlawfully preventing Plaintiffs from exercising their Constitutional rights under the Civil Rights Act of 1964 to report and file complaints and federal actions regarding discriminatory practices, violations of their civil rights, and wrongdoing, as guaranteed under the U.S. Constitution and 42 U.S.C. Section 2000e-3(a);

(h)   award all appropriate damages, including nominal, compensatory, and punitive damages against Defendants, including against Defendants Fadlallah, Mosallam, Alie-Bazzi, Rafferty, and Whiston in their individual capacities pursuant to applicable law;

(i)   order that Defendant DPS purge and clear Plaintiffs' respective employment records and any related records of any negative or unfavorable information related in any way to any matter set forth herein;

(j)   order that Defendant DPS re-instate Plaintiff Purcell to his original status and remove all negative, progressive "phase" status from his employment status and file;

(k)   order that Defendants pay Plaintiffs full reimbursement of all sick and

vacation days they were forced to take as a result of the high stress caused by Defendants'

harassment and persecution of Plaintiffs;

(l)  order that Defendants pay Plaintiffs full front pay as well as provide them

with any applicable employment benefits in the form of monetary damages;

(m) retain jurisdiction of this matter for the purpose of enforcing this Court's

orders;

(n)   award Plaintiffs their reasonable attorney's fees, costs, and expenses

pursuant to 42 U.S.C. Section 1988, the Americans With Disabilities Act of 1990, 42 U.S.C.

Section 2000e-3(a), the Michigan Whistleblowers' Protection Act, the Michigan Persons With

Disabilities Civil Rights Act, and the Elliot-Larsen Civil Rights Act, and other applicable law;

and

(o)  statutory costs; and

(p)  grant such other and further relief as this Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury of all issues triable of right by a jury.


Respectfully submitted,


By: s/Deborah K. Schlussel
Deborah K. Schlussel (P56420)
Law Offices of Debbie Schlussel
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409
WriteDebbie@gmail.com

Dated:  September 5, 2011