# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**BRYAN PURCELL** and
**GEORGENE STERGALAS,**

   Plaintiffs,

v.

**IMAD FADLALLAH**, individually and
In his official capacity as Principal of
Dearborn Fordson High School,

**YOUSSEF  MOSALLAM,** individually and
In his official capacity as Principal of Dearborn
Fordson High School,

**MAYSAM ALIE-BAZZI,** individually and in
Her official capacity as Assistant Principal of
Dearborn Fordson High School,

**BRIAN WHISTON**, Individually and in his
Official capacity as Superintendent of Dearborn
Public Schools,

**THOMAS RAFFERTY**, individually and in his
Official capacity as Human Resources Director
And Independent Contractor/Consultant to
Dearborn Public Schools, and

**DEARBORN PUBLIC SCHOOLS**, a Michigan
Municipal corporation,

   Defendants.

Case No. 2:10-cv-13444-RHC-MJH

Hon. Robert H. Cleland
Magistrate Michael Hluchaniuk

_____/

DEBORAH K. SCHLUSSEL (P56420)
LAW OFFICE OF DEBBIE SCHLUSSEL
Attorney for Plaintiffs
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409

KEVIN T. SUTTON (P65364)
LUSK & ALBERTSON
Attorney for Defendants
40950 Woodward Avenue, Suite 350
Bloomfield Hills, MI  48304-5129
(248) 988-5695

_____/

**<u>COUNTER-STATEMENT OF MATERIAL FACTS</u>**

**<u>PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANTS'</u>**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

**<u>BRIEF IN SUPPORT OF</u>**
**<u>PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANTS'</u>**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

**<u>CERTIFICATE OF SERVICE</u>**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BRYAN PURCELL** and
**GEORGENE STERGALAS,**

       Plaintiffs,

v.

**IMAD FADLALLAH**, individually and
In his official capacity as Principal of
Dearborn Fordson High School,

**YOUSSEF  MOSALLAM,** individually and
In his official capacity as Principal of Dearborn
Fordson High School,

**MAYSAM ALIE-BAZZI,** individually and in
Her official capacity as Assistant Principal of
Dearborn Fordson High School,

**BRIAN WHISTON**, Individually and in his
Official capacity as Superintendent of Dearborn
Public Schools,

**THOMAS RAFFERTY**, individually and in his
Official capacity as Human Resources Director
And Independent Contractor/Consultant to
Dearborn Public Schools, and

**DEARBORN PUBLIC SCHOOLS**, a Michigan
Municipal corporation,

       Defendants.

Case No. 2:10-cv-13444-RHC-MJH

Hon. Robert H. Cleland
Magistrate Michael Hluchaniuk

_____/

DEBORAH K. SCHLUSSEL (P56420)
LAW OFFICE OF DEBBIE SCHLUSSEL
Attorney for Plaintiffs
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409

KEVIN T. SUTTON (P65364)
LUSK & ALBERTSON
Attorney for Defendants
40950 Woodward Avenue, Suite 350
Bloomfield Hills, MI  48304-5129
(248) 988-5695

_____/

## COUNTER-STATEMENT OF MATERIAL FACTS

NOW Come Plaintiffs, BRYAN PURCELL and GEORGENE
STERGALAS, and for their Counter-Statement of Material Facts respond in
like numbered paragraphs to Defendants' Statement of Material Facts, but
only respond to those facts that are not specifically contested by Plaintiffs.

6.      Plaintiffs deny that Mr. Rafferty ended his relationship with
the Dearborn Public Schools in 2010.  Appendix, Exhibit B.

16.      Plaintiffs deny that Mr. Fadlallah never made the statement
that he "sees Dearborn Fordson High School as a Muslim school, both in
students and faculty and is working to that end" or any comments to that
effect.  Mr. Fadlallah did, in fact, make such statements.  Appendix,
Exhibits A, B.

21.      Plaintiffs deny this because, while the Michigan Tenure
Commission did uphold Plaintiff Purcell's discharge, Plaintiff Purcell is in
the process of drafting a late appeal of the Michigan Tenure Commission to
the Michigan Court of Appeals, which shall be filed shortly.  Appendix,
Exhibit B.

25.  While Plaintiff Stergalas  was forced to fill out a
mandatory transfer request, as required in the course of her employment, she
denies that this was a request to transfer from Fordson.  Appendix, Exhibit
A.

33.  Plaintiff Purcell denies this because while he admits that religion-based and national-origin-based discrimination was part of Purcell's claims regarding the reasons for the Tenure Charges, Plaintiff Purcell also cited other discrimination, such as that based on his disability covered by the Americans With Disabilities Act (ADA).  Appendix, Exhibit B.

36.  Plaintiff Purcell denies this because, while some witnesses were called and some exhibits were offered, Plaintiff Purcell maintains that several witnesses of his were not allowed to testify and several of those that were had their testimony improperly stricken, and many of his exhibits were not allowed, despite no basis in law.  Appendix, Exhibit B.

43.  Plaintiffs deny this because, while State Tenure Commission rejected each of Plaintiff Purcell's 43 Exceptions, the reasons given for rejecting them had no basis in law and one of the Commission members had a major conflict of interest, as he has in the past expressed personal animosity for Plaintiffs' attorney and her religion and has been seeking money for projects associated with the Muslim community that discriminated against Plaintiff Purcell.  Appendix, Exhibit B.

45.  While Plaintiffs admit that their application for leave to appeal has not yet been filed, Plaintiffs deny that the decision of the State Tenure Commission is final and not subject to appeal, as Plaintiffs will shortly file a late application for leave to appeal as permitted by the Michigan Court of Appeals up to six (6) months after the deadline.

Appendix, Exhibit B.

46. Plaintiff Stergalas denies that she has never had any direct interaction with Mr. Whiston.  Appendix, Exhibit A.

49.    Plaintiff Stergalas denies that she has had limited interaction with Mr. Rafferty.  In fact, she repeatedly contacted him to complain about her treatment by Dearborn Public Schools, and met with him at length.  Appendix, Exhibit A.

50.    Plaintiff Stergalas denies that her interaction with Rafferty was limited to two occasions, as there were more interactions and several attempts to contact him to which he did not respond.  Appendix, Exhibit A.

51.    Plaintiffs deny this because the purpose of the meeting in question was not to discuss the results of an internal investigation, as Defendants maintain, but to discuss a pattern of harassment of Plaintiff Stergalas after she acted as a whistleblower regarding an incident of violence perpetrated against a student by Imad Fadallah, the Principal of Fordson High School.  Appendix, Exhibit A.

53. Plaintiff Stergalas denies this statement and does, indeed,  have personal, direct, firsthand knowledge regarding items a), b), c), d), e) , f) g), i), k), l),  and m).  Appendix, Exhibit A.

54. Plaintiff Purcell denies this because while Purcell was unable to get Mr. Whiston to meet with him, despite taking a day off to meet with Mr. Whiston, a visit to his office, and several e-mails to Mr. Whiston regarding

his situation, Purcell did in fact have several interactions with Mr. Whiston, but those interactions were ignored and deliberately not responded to by Mr. Whiston.  Appendix, Exhibit B.

56.  Plaintiffs deny this because while Ms. Alie-Bazzi did, in some scant few instances make a pretense at responding to Mr. Purcell's requests to address disruptive students, Ms. Alie-Bazzi generally did not address the students, and in many cases encouraged their disruptive behavior, as well as posting a police office in front of Mr. Purcell to harass and intimidate him during his class.  Appendix, Exhibit B.

57.   Plaintiff Purcell denies that this happened just once, as he called the main office to request administrator assistance on several occasions, including more than one when Alie-Bazzi visited his classroom.  Appendix, Exhibit B.

58. While Plaintiff admits that he did not teach often during the time that Mr. Mosallam was the principal, he denies that the interactions with Mosallam were "limited" insofar as there were some interactions and the term "limited" is not defined.  Appendix, Exhibit B.

59.   Plaintiff denies that Mosallam conducted a legitimate formal classroom observation and evaluation of Plaintiff Purcell.  Appendix, Exhibit B.

60. Plaintiff Purcell denies that his interaction with Mr. Rafferty was chiefly in the context of disciplinary hearings and the other matters

7

specified.  Plaintiff Purcell's primary interaction with Mr. Rafferty was regarding the repeated harassment of Plaintiff Purcell by Dearborn Public Schools officials with regard to Plaintiff Purcell's disability, religion, national origin, ethnicity, scheduling, an excess of disruptive and behavioral problem students and so on.  Appendix, Exhibit B.

61.  Plaintiff Purcell denies that he has no personal direct, firsthand knowledge regarding the alleged matters in the following items—a), b), c), d), e), f), g),  h), i), j), and k) and maintains that on the contrary, he does, in fact, have such knowledge.  Appendix, Exhibit B.

63.  Plaintiff Purcell denies that he first provided medical documentation regarding his diabetic condition in June 2006.  He provided it when he was first hired by the Dearborn Public Schools.  Appendix, Exhibit B.

65.  Plaintiff Purcell denies that he identified only three occasions when his teaching schedule did not comport with his medical needs.  In fact, there were numerous occasions where that was the case.  Appendix, Exhibit B.

66. Plaintiff Purcell denies that his concerns with his teaching schedule were remedied once he raised the issue with the Fordson administration.  In fact, they were not remedied until after he made repeated requests, went through repeated hoops, and involved an attorney.  Appendix, Exhibit B.

69.  Plaintiff Purcell denies that the teaching scheduled provided to

him complied with the note presented by him to the Dearborn Public Schools, as it did not comply with the conditions set forth in the note in addition to the requirement regarding breaks.  Appendix, Exhibit B.

70.  Plaintiff denies that his teaching schedule was modified to accommodate him.  He went through repeated harassment and had to jump through hoops.  Appendix, Exhibit B.

72.  Plaintiff Purcell denies that he was accommodated and notes that on many occasions he was not given a room with air conditioning, despite the note from May 2006.  Appendix, Exhibit B.

73. Plaintiff Purcell denies that the change noted was made as a result of a voluntary switch to teaching math, as that was not his specialty and he was force to do the switch to attempt to start fresh and get away from the discrimination and harassment and problem students he was assigned, but the switch did not work.  Appendix, Exhibit B.

74. Plaintiff Purcell denies that the alleged  "grouping together" of math classrooms is the reason he was denied a classroom with air conditioning, and that it was yet another attempt by Defendants to harass him and create a hostile work environment for him.  Appendix, Exhibit B.

75.  Plaintiff Purcell denies that he never raised the issue of his classroom assignment and maintains that he did in fact raise this issue repeatedly, but at some point, he realized that his complaints would never be heeded by Defendants.  Appendix, Exhibit B.

9

76.  Plaintiff Purcell denies that the change noted was made as a result of a voluntary switch to teaching math, as that was not his specialty and he was force to do the switch to attempt to start fresh and get away from the discrimination and harassment and problem students he was assigned, but the switch did not work.  Appendix, Exhibit B.

77. Plaintiff denies that, other than the issues regarding his teaching schedule and having an air conditioned room, all other accommodations requested by him have been provided by Dearborn Public Schools.  In fact, Plaintiff Purcell denies that such accommodations have been made and, in fact, Defendants took disciplinary actions against Purcell because he needed to leave to take shots and eat food  during Parent-Teacher Conferences, pursuant to his condition.   Appendix, Exhibit B.

78.   Plaintiff denies that this memorandum was legitimate and maintains that the memo was part of Defendants' ADA-violative hostile work environment that Defendants created for Plaintiff Purcell.  Plaintiff also denies that the memorandum was legitimate, as Plaintiff, in fact, was told by Principal Imad Fadlallah that Plaintiff was not allowed to leave during Parent-Teacher Conferences for even a short time, and Plaintiff needed time off to take his medication and otherwise attend to his disabilities.  Appendix, Exhibit B.

79. Plaintiff denies he was advised that he was permitted to keep snacks and juice at his post during the Parent-Teacher Conferences, as he was specifically forbidden from doing so by Principal Imad Fadlallah, and

even if the snacks were permitted, it was not possible for Plaintiff to administer his required medication and keep paying attention to parents while he was eating in an attempt to respond to his blood sugar levels and diabetic condition.  Appendix, Exhibit B.

80.   Plaintiff Stergalas denies this as she felt intimidated from exercising her First Amendment rights by Defendants based on their ethnic- and religious-based discrimination and was harassed because she spoke out against a Muslim Fordson principal's violent behavior toward students. Appendix, Exhibit A.

81.     Plaintiff Stergalas denies this as she felt intimidated from exercising her religious rights under the First Amendment by Defendants based on their ethnic- and religious-based discrimination and was harassed because she spoke out against a Muslim Fordson principal's violent behavior toward students. Appendix, Exhibit A.

82.   Plaintiff Stergalas denies this as she felt intimidated from exercising her permissible speech rights under the First Amendment by Defendants based on their ethnic- and religious-based discrimination and was harassed because she spoke out against a Muslim Fordson principal's violent behavior toward students.  Appendix, Exhibit A.

83.   Plaintiff Stergalas denies this as she felt intimidated from exercising her religious rights under the First Amendment by Defendants based on their ethnic- and religious-based discrimination and was harassed because she spoke out against a Muslim Fordson principal's violent

behavior toward students.  Appendix, Exhibit A.

84.  Plaintiffs deny this as Mr. Fadlallah slapped and hit students on at least two occasions at Fordson High School, and several witnesses testified to this under oath at Plaintiff Purcell's Tenure Hearing, although their testimony on this topic was stricken as "not being relevant," despite the fact that this was part of the chaos at Fordson High School under Mr. Fadlallah, which contributed to an unruly student body.  Plaintiff Stergalas has repeatedly testified that she was told by a student that Mr. Fadlallah hit him, and the student asked her what he should do.  Appendix, Exhibit A.

Respectfully submitted,

By: /s/Deborah K. Schlussel
Deborah K. Schlussel (P56420)
Attorney for Plaintiffs
LAW OFFICE OF DEBBIE SCHLUSSEL
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409
writedebbie@gmail.com

Date:  December 7, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BRYAN PURCELL** and
**GEORGENE STERGALAS,**

      Plaintiffs,

v.

**IMAD FADLALLAH**, individually and
In his official capacity as Principal of
Dearborn Fordson High School,

**YOUSSEF  MOSALLAM,** individually and
In his official capacity as Principal of Dearborn
Fordson High School,

**MAYSAM ALIE-BAZZI,** individually and in
Her official capacity as Assistant Principal of
Dearborn Fordson High School,

**BRIAN WHISTON**, Individually and in his
Official capacity as Superintendent of Dearborn
Public Schools,

**THOMAS RAFFERTY**, individually and in his
Official capacity as Human Resources Director
And Independent Contractor/Consultant to
Dearborn Public Schools, and

**DEARBORN PUBLIC SCHOOLS**, a Michigan
Municipal corporation,

      Defendants.

Case No. 2:10-cv-13444-RHC-MJH

Hon. Robert H. Cleland
Magistrate Michael Hluchaniuk

_____/

DEBORAH K. SCHLUSSEL (P56420)
LAW OFFICE OF DEBBIE SCHLUSSEL
Attorney for Plaintiffs
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409

KEVIN T. SUTTON (P65364)
LUSK & ALBERTSON
Attorney for Defendants
40950 Woodward Avenue, Suite 350
Bloomfield Hills, MI  48304-5129
(248) 988-5695

_____/

### PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Plaintiffs, BRYAN PURCELL and GEORGENE STERGALAS ("Plaintiffs"), by and through their attorney, DEBORAH K. SCHLUSSEL, and for their Response and Objection to Defendant's Motion for Summary Judgment, pursuant to Fed.R.Civ.P.12 and Fed.R.Civ.P.56, state as follows:

1.      On or around June 2009, Plaintiffs filed complaints with the U.S. Equal Opportunities Commission ("EEOC") regarding the discrimination allegations alleged in this action.

2.      On August 27, 2010, Plaintiffs filed the instant action, after requesting and receiving a "right to sue letter" from the Commission.

3.      After Plaintiffs filed their initial complaints with the EEOC, retaliation against them was stepped up by Defendants.

4.      After Plaintiffs filed their initial Complaint in the instant action, retaliation against them by Defendants was stepped up some more.

5.      Defendants proceeded to conduct intense and increasingly frequent steps in order to quicken the pace of an apparent attempt to do an end run around the instant action and a jury of Plaintiffs' and Defendants' peers and go forth into tenure proceedings against Plaintiff Purcell.

6.      To that end, Defendants conducted increased "evaluations" and "write-ups" of Plaintiff Purcell and hearings against Purcell, all of it so that Defendants could escalate Purcell into increased levels of discipline with the apparent goal of a termination and Tenure Hearing that would do an end run around the instant case and the EEOC

complaints, all of which were filed prior to the termination and subsequent Tenure Hearing.

7.     Defendants knew that there is only one Administrative Law Judge, James Ward, who hears teacher tenure termination appeals and has a track record of sustaining the vast majority of teacher terminations, and they knew the same about the Michigan Tenure Commission's virtual rubber stamp of ALJ Ward's decisions.  They also knew that ALJ Ward does not have a grasp of Michigan case law and court rules and is arbitrary and capricious—arbitrary and capricious in denying petitioner teachers their right to call witnesses and adequately litigate cases.

8.     Defendants now argue that their retaliation and attempt at an end run around the instant action, by setting in motion the proceedings of a state commission, should be rewarded, despite the fact that Defendants made a similar argument in their pleadings opposing Plaintiffs' Motion to Amend Complaint, which this Honorable Court shot down in its Order granting said amendment (Docket #26).

9.     While it is true that ALJ Ward upheld Plaintiff Purcell's discharge and that the Michigan Tenure Commission affirmed his decision despite 43 different exceptions filed by Plaintiff Purcell, that decision is not final, as Plaintiff Purcell will shortly file his application for leave to appeal, such application which is permitted to be filed for up  to six (6) months, and therefore, there is no res judicata or collateral estoppel, despite Defendants' claims.

10..     Defendants cite several cases claiming that the various civil rights issues raised by Plaintiff Purcell are collaterally estopped, and yet, unlike in the instant action every single one of those cases consists of Plaintiffs who first filed with a state

commission and later filed federal civil rights actions and/or separate lawsuits in other courts.

11.     Further Plaintiff Purcell was not permitted to actually litigate his civil rights and retaliation claims in the Tenure Hearing.  The administrative law hearing was a circus.  The administrative law judge arbitrarily and capriciously did not permit several witnesses of his to testify at all, including rebuttal witnesses and those who wished to testify about the pattern of discrimination in favor of Muslims and Arabs and against non-Muslims and non-Arabs in the Dearborn Public Schools.

12.      The administrative law judge admitted that there was no basis in law for his denials, but he denied the rights of witnesses, such as Gulala Abraham, to testify for such arbitrary and capricious reasons as that Plaintiff did not mention every single lawsuit in which a witness had participated against Defendants' in its Petition, something that is not required and not done in such a petition.

13.     The administrative law judge denied the right to call rebuttal witnesses citing no reason at all.  The administrative law judge struck the testimony of a least three witnesses regarding the discrimination against non-Muslims and regarding violence and hitting of students that they witnessed by Fordson Principal Imad Fadlallah.

14.     The administrative law judge approved when Defendants' attorney told subpoenaed witnesses not to show up to the hearing (and they did not show up).

15.     Three of Plaintiffs' witnesses who were women were treated so rudely by the administrative law judge that they were brought to tears and heavy sobbing by the administrative law judge during their testimony.

16.     To the extent that the administrative law judge intimidated and harassed Plaintiff Purcell's witnesses to the point of sobbing and prevented and precluded Plaintiff Purcell from putting on his case, there can be no collateral estoppel.  Thus, the issues were neither litigated nor adjudicated.  And they are the subject of a late application for leave to appeal to be filed shortly.

17.     Plaintiffs deny Defendants' assertion that claims advanced by Plaintiff Purcell—including Counts 1, 4, 7, 8, 9, 10, and 13—are precluded by collateral estoppel.

18.     Plaintiffs deny that, pursuant to Fed.R.Civ.P.12(c), Counts 4, 5, 6, 8, 9, and 11 of Plaintiffs' Complaint fail to state a claim upon which relief can be granted, and therefore, Defendants are not entitled to dismissal.

19.     Plaintiffs deny that, pursuant to Fed.R.Civ.P.56(c), Counts 1, 2, 3, 4, 6, 8, 9, and 12 of Plaintiffs' Complaint fail to present a genuine issue of material fact, and therefore, they should not be dismissed with prejudice.

20.     Plaintiffs have brought forth sufficient evidence to create genuine issues of material fact regarding their claims that they were subject to illegal discrimination, harassment, and other illegal conduct in violation of federal and state civil rights laws, federal and state disabilities laws, federal and State whistleblower statutes,  and the right to privacy.

WHEREFORE,  Plaintiffs, BRYAN PURCELL and GEORGENE STERGALAS, respectfully request that this Honorable Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

By: /s/Deborah K. Schlussel
Deborah K. Schlussel (P56420)
Attorney for Plaintiffs
LAW OFFICE OF DEBBIE SCHLUSSEL
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409
writedebbie@gmail.com

Date:  December 7, 2012

18

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BRYAN PURCELL** and
**GEORGENE STERGALAS,**

      Plaintiffs,

v.

**IMAD FADLALLAH**, individually and
In his official capacity as Principal of
Dearborn Fordson High School,

**YOUSSEF  MOSALLAM,** individually and
In his official capacity as Principal of Dearborn
Fordson High School,

**MAYSAM ALIE-BAZZI,** individually and in
Her official capacity as Assistant Principal of
Dearborn Fordson High School,

**BRIAN WHISTON**, Individually and in his
Official capacity as Superintendent of Dearborn
Public Schools,

**THOMAS RAFFERTY**, individually and in his
Official capacity as Human Resources Director
And Independent Contractor/Consultant to
Dearborn Public Schools, and

**DEARBORN PUBLIC SCHOOLS**, a Michigan
Municipal corporation,

      Defendants.

Case No. 2:10-cv-13444-RHC-MJH

Hon. Robert H. Cleland
Magistrate Michael Hluchaniuk

_____/

DEBORAH K. SCHLUSSEL (P56420)
LAW OFFICE OF DEBBIE SCHLUSSEL
Attorney for Plaintiffs
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409

KEVIN T. SUTTON (P65364)
LUSK & ALBERTSON
Attorney for Defendants
40950 Woodward Avenue, Suite 350
Bloomfield Hills, MI  48304-5129
(248) 988-5695

_____/

## BRIEF IN SUPPORT OF
## PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

NOW COME Plaintiffs, GEORGENE STERGALAS and BRYAN PURCELL,

and for their Brief in Support of Plaintiffs' Response and Objection to Defendants'

Motion for Summary Judgement, state as follows:

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………….………Page 21

TABLE OF AUTHORITIES……………………………………...………..Page 22

STATEMENT OF ISSUES …………………………………...…………Page 23

INTRODUCTION…………………………………………………………Page 23

STANDARD OF REVIEW………………………………………………Page 24

ARGUMENT…………………………………………………………..Page 25

**I.  PLAINTIFF PURCELL'S CLAIMS ARE NOT AND SHOULD NOT BE
PRECLUDED BY THE DECISION OF THE STATE TENURE COMMISSION.**
……………………………………………………………………Page 29

**II.DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT
BECAUSE PLAINTIFFS HAVE SET FORTH AFFIRMATIVE EVIDENCE
WHICH SUPPORTS A VIABLE CAUSE OF ACTION AGAINST DEFENDANTS**
…………………………………………………………………...Page

CONCLUSION……………………………………………………...Page 40

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases - Federal</u>**

**<u>Cases – Michigan</u>**

**<u>Statutes</u>**

**<u>Rules</u>**

**<u>Constitutional Provisions</u>**

## STATEMENT OF ISSUES PRESENTED

**I.  WHETHER PLAINTIFF PURCELL'S CLAIMS ARE PRECLUDED BY THE DECISION OF THE STATE TENURE COMMISSION.**

**Plaintiffs state:  "No."**
**Defendants state:  "Yes."**
**This Honorable Court Should Answer:  "No."**

**II.  WHETHER PLAINTIFFS HAVE BROUGHT FORTH SUFFICIENT EVIDENCE TO CREATE A GENUINE ISSUE OF MATERIAL FACT REGARDING THEIR CLAIMS THAT THEY WERE DISCRIMINATED AGAINST ON THE BASIS OF RELIGION, NATIONAL ORIGIN, ETHNICITY, DISABILITIES, AND WHISTLEBLOWER STATUS.**

**Plaintiffs would state:  "Yes."**
**Defendants state:  "No."**
**This Honorable Court Should Answer:  "Yes."**

## INTRODUCTION

Despite the lengthy and voluminous nature of Defendants' Motion for Summary Judgment, Defendants fail at the primary objective of such a motion:  that even when considering all facts, evidence, and inferences in Plaintiffs' Complaint as if they were true and in the light most favorable to Plaintiffs, that Plaintiffs fail to state a case.  In the instant action, if this Honorable Court uses this standard of review, Defendants' Motion should fail, as Plaintiffs have, in fact, made sufficient allegations to support a prima facie showing for their claims of discrimination and retaliation based on religious, ethnic, national origin, disabilities, and whistleblower bases both under federal and Michigan statutes and caselaw.

Further, Defendants' want this Honorable Court to reward them for taking

quick, retaliatory steps to do an end run around the instant action and this Honorable Court by filing repeated disciplinary actions and, ultimately, issuing a termination of Plaintiff, Bryan Purcell, in order to steal the first bite at the apple and deprive Plaintiff Purcell of the action he filed through a slow federal system of the Equal Opportunities Employment Commission.  Although Plaintiff Purcell filed that action with the EEOC in 2009, he did not get a "right to sue letter" until almost a year later, during which Defendants' took various retaliatory steps in order to terminate him and avoid a trial by jury before an experienced Federal Judge.  They now use this retaliation as a claim of collateral estoppel, when such retaliatory behavior should not be used as a legal chip to deprive Plaintiff of a legitimate day in court.

Further, Plaintiff Purcell had no choice but to fight the termination, and now Defendants want to penalize him for that.  And in said fight—appealing his termination— he was not allowed to put on a case for his civil rights claims and, therefore, there can be no collateral estoppel.  Further, Plaintiff Purcell is in the process of preparing and filing his late application for leave to appeal his tenure termination with the Michigan Court of Appeals.

For these reasons and those further set forth herein, Plaintiffs pray that this Honorable Court deny Defendants' Motion for Summary Judgment in its entirety, with prejudice.

## SUMMARY JUDGMENT STANDARD OF REVIEW

When reviewing Defendants' Motion, this Honorable Court must view the evidence, all facts, and inferences that may be drawn from the facts in the light most favorable to Plaintiffs.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). When viewing all evidence, facts, and inferences that may be drawn from the facts in the light most favorable to Plaintiffs, Plaintiffs have established that they have a substantial case, that there is a genuine dispute, and that summary judgment should not be granted. Fed.R.Civ.P. 56(a) states:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to **any** material fact and the movant is entitled to judgment as a matter of law.

(Emphasis added.) Fed.R.Civ.P. 56(a).

Plaintiffs have shown that there is a genuine dispute as to all material facts, and, therefore, the movant—Defendants—are not entitled to summary judgment as a matter of law.

## ARGUMENT

## I. PLAINTIFF PURCELL'S CLAIMS ARE NOT AND SHOULD NOT BE PRECLUDED BY THE DECISION OF THE STATE TENURE COMMISSION.

Defendants claim that the Michigan Tenure Commission's decision relating to the Claim of Appeal filed by Plaintiff Purcell is final. But Plaintiff Purcell is in the process of preparing a late application for leave to appeal, and therefore, the decision is not final. Plaintiff has six (6) months to file said late application for leave to appeal, and said late application will be filed shortly, likely before the hearing date on this Defendants' Motion for Summary Judgment.

25

Further, Defendants cite numerous cases claiming that Plaintiffs' instant federal action is estopped under the doctrine of collateral estoppel, which prevents a party from relitigating matters already determined by an **earlier** tribunal.  But Defendants retaliatory stepping up of disciplinary action against Plaintiff Purcell was conducted **after** Defendants knew that Plaintiff Purcell had already filed a complaint with the United States Equal Employment Opportunities Commision in anticipation of a "right to sue" letter and was stepped up after Plaintiff filed the instant action in federal court.  It was only with that hastened retaliatory action that Defendants were able to terminate Plaintiff Purcell and instigate the Michigan Tenure Commission hearing process, as an end run around the *real* **earlier** tribunal, the instant forum in federal court for the instant case.

In each of the cases cited by Defendants, *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n. 6; 102 S. Ct. 1883; 72 L. Ed. 2d 262 (1982), *Cooper v. Oak Park Sch. Dist.*, 624 F. Supp. 515, 517 (E.D. Mich., 1986), *Nummer v. Michigan Department of Treasury*, 448 Mich. 534; 533 N.W.2d 250, 253 (1995), and *Pack v. Mt. Morris Consolidated Sch. Dist.*, 2012 U.S. App. LEXIS 13641, pp. *6-13 (6th Cir., 2012), the party seeking "relitigation" of the issues tried to get a second bite at the apple without going first to another forum.  And in that regard—the key regard, none of those cases are like the instant case, in which Plaintiffs sought the earlier forum in which to litigate the issues, but Defendants—seeking an easy way out—sought an end-run around the earlier forum by hastening retaliatory actions in order to reach the later forum earlier.  They should not be rewarded for retaliating and racing the clock in the federal action in order to get out of litigating the issues in the earlier forum, which is this forum, federal court, in the instant action.

If there is or should be any collateral estoppel here, it should be against Defendants for attempting to relitigate issues before they were heard in the earlier forum. Plaintiffs filed their civil rights complaints with the U.S. Equal Employment Opportunities Commission ("EEOC") in mid-2009.  They repeatedly sought "right to sue" letters from the EEOC thereafter, but did not receive said letter until mid-2010, almost a year later.  As soon as they received their "right to sue" letters, which are necessary before civil rights lawsuits against employers can filed, they timely filed suit with the instant action.  As soon as Plaintiffs went to the EEOC, Defendants began a stepped up harassment campaign of disciplinary hearings in order to reach the "termination" stage so that they could avoid the earlier forum and steal the first bite at the apple.

Had Plaintiffs not amended their Complaint in the instant action, their case would have been litigated prior to the Michigan Tenure Commission case.  To rule that their case is collaterally estopped in federal court because they amended their Complaint to include the very retaliation that resulted in Plaintiff Purcell's termination and it slowed the clock in the earlier forum would be to reward that retaliation and the litigation of issued in a later forum, contrary to the very public policy in the U.S. Civil Rights laws against retaliation and contrary to the very public policy espoused in the cases that Defendants cite.  The separate portion of the U.S. civil rights laws providing a cause of action against retaliation, 42 U.S.C. Section 2000e-3(a), was not meant to penalize victims of retaliation (and reward the retaliators) for amending their complaints to assert retaliation when they are subject to it by malefactors, such as Defendants in the instant action.

Further, Plaintiff Purcell had no choice but to engage in the Michigan Tenure Commission forum.  He was terminated as a result of stepped up, pretextual disciplinary actions designed to hasted the steps to his termination in retaliation for his EEOC and federal complaints.  In order to attempt to keep his job and his livelihood, he had no choice but to respond to the termination with a Claim of Appeal and go through the process.  Had he chosen not to do so, the retaliatory termination would have stood, and Defendants would still be making the same arguments they now make asking for this Honorable Court to reward them for that retaliation and for their attempt to sidestep this forum for an alternative, much more friendly (to them) forum away from a jury and a skilled federal judge experienced in federal civil rights laws and litigation involving them.

Moreover, Defendants' claim that Plaintiff Purcell was allowed to actually litigate the issues in question is false.  Administrative Law Judge James Ward repeatedly stated on the record that he was primarily interested in Plaintiff Purcell's abilities as a teacher as allegedly described in trumped up "observations" and "evaluations" almost entirely made after the EEOC and federal complaints were filed.  ALJ Ward refused to allow Plaintiff Purcell to put on his case regarding the civil rights issues and was arbitrary and capricious, refusing to use Michigan Court rules as required.  He prevented one witness, Gulala Abraham, who had filed two civil rights suits against Defendants Imad Fadlallah and Dearborn Public Schools from testifying on the baseless grounds that only one of her lawsuits was mentioned in Plaintiff Purcell's Claim of Appeal and More Definite Statement.  He refused to allow Plaintiff Purcell to call rebuttal witnesses.  He struck the testimony of several of Plaintiff Purcell's witnesses.  And Ward's behavior was such that

28

three of Plaintiff Purcell's witnesses were brought to heavy tears and sobbing and were intimidated from testifying. This can hardly be considered a "full opportunity" to litigate the issue.

Further, ALJ Ward is not a federal judge and is not experienced in trying federal civil rights cases, which are not the venue of the Michigan Tenure Commission. Ward was, at one time, a County Circuit Court Judge who was defeated in his re-election bid and was appointed to be the only administrative law judge to hear teacher tenure cases. That is all he hears. He did not consider nor did he have the experience to consider federal civil rights issues, and as Defendants state in their own brief, "the gravamen of the case before the STC was the discharge of Plaintiff Purcell for a lack of teaching competence," Defendants' Brief, p. 4., not the civil rights case he was not allowed to put forth in Ward's star chamber hearing. Ward has a track record of supporting school districts in terminations of teachers, as does the Tenure Commission. Defendants knew this, which is why they hastened their retaliation against Plaintiff Purcell in order to go to a secondary forum and avoid the earlier forum, then argue collateral estoppel. They should not be rewarded for this underhanded and illegal retaliatory behavior.

**II. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS HAVE SET FORTH AFFIRMATIVE EVIDENCE WHICH SUPPORTS A VIABLE CAUSE OF ACTION AGAINST DEFENDANTS FOR VIOLATIONS OF**

> **A) THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. Section 12111 *et seq*.);**

The Americans With Disabilities Act of 1990 (42 U.S.C. Section 12111 et seq) states:

> [N] covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement or discharge of
employees, employee compensation, job training, and other terms,
conditions, and privileges of employment.

42 USC 12112(a).  A "covered entity" includes any employer who has fifteen (15)

or more employees each working day in each of twenty (20) or more calendar weeks in

the current or preceding calendar year.  42 USC 12111(2),(5).  A plaintiff alleging a

violation of the ADA carries the burden of proving a prima facie case.  *Doe v. Univ. of

Maryland Medical Sys. Corp.*, 50 F.3d 1261, 1264-1265 (C.A.4, 1995).  To satisfy this

burden, the plaintiff must first show that he is a "qualified individual with a disability"

entitled to the ADA's protections.  42USC 12112(a).  A "disability" is defined under

Section 12102(2) as "(A) a physical or mental impairment that substantially limits one or

more of the major life activities of such individual;  (B) a record of such an impariement;

or (C) being regarded as having such an impairment."  A "qualified individual with a

disability" is defined as "an individual with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires . . . ."  Section 12111(8).

In this case, Plaintiff Bryan Purcell has established that he was regarded as having

a physical or mental impairment that "substantially limits" one or more of his major life

activities.  42 USC 12101(2) *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247 (CA 6

2000).  After the plaintiff presents sufficient evidence demonstrating that he is a

"qualified individual with a disability," he must show that his employer "discriminated

against him.  Section 12112(b).  One the plaintiff has presented a prima facie case, the

burden shifts to the employer to rebut the plaintiff's evidence *Manzer v. Diamond

Shamrock Chemicals Company,* 29 F3d 1078, 1082 (1994).  Plaintiff Purcell would

submit that he has established that his employer discriminated against him on the basis of his disability among other things and did not reasonably accommodate him as required under the ADA.

Plaintiff Purcell stated that he was repeatedly refused adequate time for his eating and other medical needs, such as shots, despite repeatedly requesting that and providing documentation of that need from medical professionals.  Plaintiff stated that he was harassed and disciplined for leaving the Parent-Teacher conference area to take his shots and eat.  He stated that he sought reasonable accommodations and that those accommodations were repeatedly denied him, in violation of the ADA.  He also was denied an air-conditioned room and was ordered by Defendant Imad Fadlallah to call Fadlallah for permission each time he went to the bathroom, even if he was not in Fordson High School.  Defendants' used Plaintiff Purcell's disabilities as pretext for disciplinary hearings and actions against him and they should be precluded from Summary Judgment, therefore.  Based on the foregoing, Plaintiff Purcell sumits that he has brought forth sufficient evidence to create a question of fact as to whether Defendants are guilty of disability discrimination as defined in the ADA.

### B)  THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT (MCL 37.1101 et seq.)

As it pertains to Plaintiff Purcell's state law claims of violations of the Michigan Persons With Disabilities Civil Rights Act, the analysis is similar to the ADA analysis. In *Chmielewski v. Xermac, Inc*., 457 Mich. 593, 601 (1998) (quoting *Allen v. Southeastern Michigan Transportation Auth.*, 132 Mich. App. 533, 537-538 (1984)), the Michigan Supreme Court stated that the Act "prohibits discrimination against individuals

because of their handicapped status.  The purpose of the act is to mandate 'the employment of the handicapped to the fullest extent reasonably possible."  Pursuant to MCL 37.1201(1)(a)-(e), an "employer" shall refrain from taking any of a number of adverse employment actions against an individual "because of a disability . . . that is unrelated [or not directly related] to the individual's ability to perform the duties of a particular job or position.

A prima facie case of discrimination under the Act requires Plaintiff to show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute.  Id., at 602.

A "disability" is defined as:  (i) "[a] determinable physical or mental characteristic of an individual . . . if the characteristic; (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position . . .";  (ii) "[a] history of [such a] determinable physical or mental characteristic . . ."; or (iii) "[b]eing regarded as having [such a] determinable physical or mental characteristic . . ." "'Unrelated to the individual's ability' means, with or without accommodation, an individual's disability does not prevent the individual from  . . . performing the duties of a particular job or position."  MCL 37.1103(1)(i).

Once the plaintiff has proved that he is a "qualified person with a disability" protected by the Michigian PWDCRA, he must next demonstrate that he has been discriminated against in one of the ways set forth in MCL 37.1202.  If the plaintiff presents a prima facie case of purposeful discrimination, the burden then shifts ot the

defendant to rebut such evidence.  *Kerns v. Dura Mechanical Components, Inc.* (On

Remand), 242 Mich Appl. 1, 12 (2000); *Hazle v. Ford Motor Co.*, 464 Mich.  456, 463-

466 (2001).

Both the ADA and the PWDCRA provide protection against discrimination in

employment for those with disabilities, including those regarded as having a disability.

42 USC 12112(a).  MCL 37.1103(d)(iii).  Plaintiff Purcell has brought forth evidence that

he was disabled under both of these statutes, that he was not reasonably accommodated

by Defendants, and that he was harassed by Defendants because of and in connection

with his disability with regard to going to the bathroom, having an air conditioned room,

and having adequate scheduling for eating and administering shots.  As such, Plaintiff

Purcell has established a prima facie case for discrimination against him by Defendants

under both disabilities statutes, and, therefore, Defendants' Motion for Summary

Judgment must fail on these counts.

### C) THE FIRST AMENDMENT (ESTABLISHMENT CLAUSE, FREE EXERCISE, FREEDOM OF SPEECH, & FREEDOM OF EXPRESSIVE ASSOCIATION - 42 U.S.C. Section 1983);

Both Plaintiffs Purcell and Stergalas have alleged that they were discriminated

against on the basis of their status as minority groups within Fordson High School and

the Dearborn Public Schools.  Because they are not Shi'ites, not Muslims, not Arabs, and

not from the Middle East (in particular, Lebanon), and because they are White, Christian,

non-Arab, non-Muslims who are from the United States, they were discriminated against

by Imad Fadlallah and other Muslim administrators and their agents within the school

district.   Both Plaintiffs have stated that principal Fadlallah stated repeatedly that he

viewed Fordson as a Muslim or Arab high school, not as a public school.  He repeatedly

discriminated against Plaintiffs because they did not fit these groups.  And, despite their complaints to Dearborn Public Schools administrators, Plaintiffs were ignored, including and especially by the Dearborn Public Schools superintendent and Defendant, Bryan Whiston, who refused to respond, and by the Dearborn Public Schools director of human resources Thomas Rafferty who ignored them and then conducted pretextual whitewashing investigations.  This activity was widespread and the discrimination against non-Arabs and non-Muslims was widespread throughout the school district.  It was custom and policy.  To make matters worse, Defendant Alie-Bazzi posted a police officer in Plaintiff Purcell's classroom during his class, sitting facing him in the front of the room.  This was meant to intimidate and harass and was perpetrated by a decisionmaker—a person in a position of authority within the school  and the school district.

Municipalities, including political subdivisions such as school districts, are liable for the unconstitutional acts of non-policy making employees only when the employee's acts are the direct result of a municipal custom or policy.  *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 694;   98 S.Ct. 2018; 56 L.Ed.2d 611 (1978);  *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592, 607 (6th Cir. 2007).  "An act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

In the instant case, Bryan Whiston, Thomas Rafferty, Imad Fadlallah, Maysam Alie-Bazzi, and Youssef Mosallam were all in positions of decisionmaking, authority, and policymaking.  As stated by Plaintiffs in their Amended Complaint, affidavits, and

other evidence, these individuals made it a policy to harass non-Muslims and non-Arabs or to deliberately and knowingly look the other way and sanction it.  This was a widespread custom within Fordson High School and Dearborn Public Schools.  It was unwritten, practiced policy.

As a result of this policy of harassment and discrimination against non-Muslims and non-Arabs, and particularly against Christians, Plaintiffs were intimidated and unable to freely practice their First Amendment rights, including freedom of speech, freedom of expression, and freedom of association.

They also saw that it was clear that Defendants established a preferred religion, Islam, in violation of the Establishment Clause.  In their experience and pursuant to policy promoted by Defendants, Defendants aided and promoted the Islamic religion and excessively entangled in religion, including the enactment of Islamic religious restrictions and in violation of the test provided by the Court in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13; 29 L.Ed. 2d 745; 91 S. Ct. 2105 (1971).

Defendants' denial that Fadlallah and the other Defendants promoted Islam and that Fadlallah said he sees Fordson as a Muslim and/or Arab school merely creates a genuine issue of material fact.  It does not withstand the standard of review for a Motion for Summary Disposition and therefore, these counts must stand.

**D) THE FOURTEENTH AMENDMENT (EQUAL PROTECTION - 42 U.S.C. Section 1983);  THE MICHIGAN CONSTITUTION (RELIGIOUS DISCRIMINATION/EQUAL PROTECTION - (MICH. CONST. 1963, ARTICLE 1, SECTION 2);  THE ELLIOTT-LARSEN CIVIL RIGHTS ACT (MCL 37.2101 et. seq.);**

Plaintiffs stated that they were harassed and discriminated against by Defendants

because they were not Muslims, not Arabs, not from the Middle East, and because they were Christians. All of this was in violation of their Fourteenth Amendment rights to equal protection under 42 U.S.C. Section 1983, the Michigan Constitutions protections against religious discrimination and provisions for equal protection under Article 1, Section 2, and the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. Plaintiff Purcell was also harassed and discriminated against because he has a disability, which is also covered by the Elliott-Larsen Civil Rights Act.

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." US Const. Amend XIV, Section 1. "To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).

In the instant matter, Plaintiffs have established that they were targeted and treated disparately because they are non-Muslims and non-Arabs and that Imad Fadlallah and other decisionmakers and parties in positions of authority discriminated in favor of Muslims and Arabs. The analysis is similar under the Michigan Constitution protections aginst religions discrimination and for equal proection under Article 1, Section 2, as well as under the Elliott-Larsen Civil Rights Act.

It is ludicrous for Defendants to assert that Plaintiffs have not been disparately treated when they've established that they were members of a protected class—they wee

religious and ethnic minorities at Fordson High School, and Plaintiff Purcell was also a member of an additional protected class because of his disability.  And as members of those classes, they were disparately treated with harassment and discrimination, including adverse employment action.

Mr. Purcell was repeatedly disciplined and ultimately terminated from his employment.  It's incredible that Defendants claim this is not an adverse employment action.  Ms. Stergalas was forced to use up all of her vacation time and sick days because of the psychological impact and emotional distress she was caused by Mr. Fadllah and the Dearborn Public Schools, as well as Mr. Whiston and Mr. Rafferty.  She also had her private medical information disclosed by officials of the Dearborn Public Schools.  And she was ushered out of the school where she taught for years, against her will.  Both of them experienced adverse employment actions pursuant to the definitions in *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir., 2010) (internal citations omitted).

Therefore, Defendants' Motion for Summary Judgment must fail on these counts.

### E) WHISTLEBLOWERS' PROTECTION ACT  (MCL 15.361 et seq.);

Plaintiff Stergalas encouraged a student who came to her requesting advice that he should report to authorities the violence he said he experienced at the hands of then-Fordson principal Fadlallah. Her encouragement of the student to report this to authorities was a protected activity as defined by Defendants' own cases.  The fact that she herself did not report it directly but encouraged the minor student to do so and counseled him does not make the activity any less protected, and Defendants cite no case that excludes her counseling and urging the student to report it to authorities as something other than a protected activity under the Michigan Whistleblowers' Protection Act ("WPA").  In fact,

2:10-cv-13444-RHC-MJH   Doc # 53   Filed 01/30/13   Pg 38 of 40   Pg ID 1090

if anything, Plaintiff did the only thing possible to avoid retaliation and harassment by Defendants—to get the violence reported to a public body by proxy. And, yet, she was retaliated against and harassed anyway.

As stated in her affidavit and Complaint, Stergalas was harassed by Defendant Fadlallah and her emergency phone was removed from her room. She was assigned two classes to teach at the same time, with classrooms at opposite ends of the school. She was yelled at and harassed repeatedly by Fadlallah in front of students and colleagues. A non-stop whispering campaign was perpetrated against her which continues to this day. She was forcibly removed from Fordson High School against her wishes. All of this was in response to her participation in a protected activity.

Therefore, Defendants' Motion for Summary Judgment must fail on this counts.

**F) RIGHT TO PRIVACY – COMMON LAW AND HIPAA;**

Defendants claim that the disclosure of Plaintiff Stergalas' medical records in violation of the Health Insurance Portability and Accountability Act ("HIPAA") and her common law right to privacy do not constitute such violations because the release of her medical records and method of treatment, including that she was seeing a psychiatrist, are not "health information" pursuant to HIPAA and her right to privacy. This is ludicrous.

Stergalas knew that she did not authorize the release of her medical information to any of Defendants or their representatives. She also knew that the school social worker, a Muslim and a friend of Imad Fadlallah, called her on Fadlallah's behalf and learned of her private medical information from Defendant Fadlallah and/or the Dearborn Public Schools. She had actual knowledge of that.

The information clearly meets the definition of "health information" specified in Defendant's brief, and it was clearly illegally disclosed by the Defendant Dearborn Public Schools in order to harass and otherwise make Stergalas uncomfortable, violating her right to privacy and meeting all of the elements listed by Defendants for the common-law tort of invasion of privacy.  It is absurd for Defendants to claim that Stergalas has not pled the type of invasion of privacy she is claiming was violated.  In fact, she's pled exactly that.

Therefore, Defendants' Motion for Summary Judgment must fail on this count.

**G) RETALIATION – CIVIL RIGHTS ACT (42 U.S.C. Section 2000e – 3(a)).**

As previously noted, Defendants violated both Plaintiffs' civil rights by retaliating against them pursuant to 42 U.S.C. Section 2000e – 3(a).  Both Plaintiffs filed complaints with the EEOC in mid-2009, both of them filed the instant action in this Honorable Court in 2010.

As a result, Plaintiff Purcell had increased, stepped up, retaliatory disciplinary actions lodged against him by Defendants, including the placement of a police officer in front of him in his classroom, the encouragement of students to harass and violently attack him, his twice being escorted off campus by security guards with no explanation (in front of his students), and, ultimately, his termination.

Ms. Stergalas was moved against her will from Fordson High School.  A whisper campaign was begun against her by Imad Fadlallah and other school district officials. She was assigned students who harassed her and were behavioral problems and the

2:10-cv-13444-RHC-MJH   Doc # 53   Filed 01/30/13   Pg 40 of 40   Pg ID 1092

school deputy superintendent refused to discipline them.  One of the students was later convicted in a violent robbery with a gun.

Clearly, Plaintiffs were retaliated against within the meaning and definitions of 42 U.S.C. Section 2000e – 3(a), prohibiting retaliation against parties for participating in protected activities, including reporting civil rights violations, as Plaintiffs did by filing their EEOC complaints and the instant federal action.

Therefore, Defendants' Motion for Summary Judgment must fail on this count.

## CONCLUSION

WHEREFORE, Plaintiffs, BRYAN PURCELL and GEORGENE STERGALAS, respectfully request that this Honorable Court deny Defendants' Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2013, I electronically served the foregoing document upon Defendants via electronic mail:

KEVIN T. SUTTON (P65364):

ksutton@luskalbertson.com

<div style="margin-left: 40%;">

By: /s/Deborah K. Schlussel
Deborah K. Schlussel (P56420)
Attorney for Plaintiffs
LAW OFFICE OF DEBBIE SCHLUSSEL
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 354-1409
writedebbie@gmail.com

</div>

Date:  January 30, 2013