## AFFIDAVIT

Bryan Purcell, being duly sworn, deposes and says:

1. My name is Bryan Purcell.

2. I was the repeated victim of religious, ethnic, and disabilities-based harassment, discrimination, and retaliation at the hands of the Dearborn Public Schools, Imad Fadlallah, Thomas Rafferty, Bryan Whiston, Youssef Mosallam, and Maysam Alie-Bazzi, because I am a non-Arab, non-Muslim, because I have a disability, and because I refused to change grades for the daughter of a Dearborn Public Schools administrator.

3. I deny that Thomas Rafferty ended his relationship with the Dearborn Public Schools in 2010, and I saw him conducting business with the Dearborn Public Schools in late 2011/early 2012.

4. It is well known that Imad Fadlallah has made repeated statements that he sees Fordson as a Muslim and/or Arab school and that he would conduct and did conduct affairs accordingly.

5. I am in the process of filing a late appeal with the Michigan Court of Appeals regarding my dismissal from Dearborn Public Schools and the Michigan Tenure Commission decision affirming that. I did not get to present my civil rights case as the Administrative Law Judge, James Ward, refused to allow me to present several witnesses, either not allowing them to testify or striking their testimony and not allowing me to present several exhibits. My application for leave to appeal will be filed shortly. It is my understanding that one of the Michigan Tenure Commission members has a prior personal conflict of interest with and religion-based bias against my attorney and in favor of Islamic extremism and should have recused himself from the case. He may have also influenced other members of the Commission.

6. I have, in fact, had interactions with Bryan Whiston, the Dearborn Public Schools superintendent, as I have sent him several e-mails and attempted to meet with him. He has chosen to ignore me each time.

7. Maysam Alie-Bazzi refused to discipline students who attacked me violently and put them back into my classroom right after their attacks. She encouraged them to attack me and make reports against me. As further harassment of me, Ms. Alie-Bazzi placed a police officer in my classroom directly in front of my desk while I was attempting to teach a class. I repeatedly called the main office at Fordson High School to request administrator assistance from Ms. Ali-Bazzi. Yet, Ms. Alie-Bazzi never attempted to address disruptive students and only encouraged their disruptive and violent behavior against me.

8. I had some interactions with Mr. Mosallam, though I would not necessarily categorize them as "limited," as this is a relative term. However, Mr. Mosallam's "formal classroom observation and evaluation" of me was neither legitimate nor accurate and contained trumped up and fabricated allegations, many of which are refuted by photographic and other evidence. It was clear to me that the "observation and evaluation" was pretextual to ramp up a termination and do an end run around the federal civil rights lawsuit I filed.

9. I had repeated interactions with Thomas Rafferty, and these interactions were primarily to report and seek redress of the repeated harassment that I was subject to in the Dearborn Public Schools with regard to my disability, religion, national origin, ethnicity, scheduling, and an excess of disruptive and behavioral problem students that were assigned to me. As a result of my complaints, Mr. Rafferty took part in a series of retaliatory complaints and write-ups against me, in order to speed up my termination prior to the hearing of my federal civil rights lawsuit.

10. In fact, I have personal and direct, firsthand knowledge regarding Mr. Whiston's refusal to address the continued harassment, discrimination, and retaliation against me; Mr. Rafferty's participation in and sanction of continued harassment, discrimination, and retaliation against me; Mr. Mosallam's encouraging students to disrupt my classroom and make negative reports and complaints against me; Ms. Alie-Bazzi's encouraging students to leave my classroom and misbehave when they were in it, as well as make negative complaints against me; my removal off the school grounds because of an alleged concern that both Mr. Rafferty and Mr. Fadlallah had relative to my medical condition; Mr. Fadlallah having a role in scheduling classes and giving me a high number and percentage of disruptive, repeat failure, and behavioral problem students; Mr. Fadlallah's use of my disability and his refusal to accommodate it as a way to squeeze me out and replace me with Muslim Arab personnel; Repeated challenges to the existence of my disabilities by Dearborn Public Schools officials, including Mr. Rafferty, Mr. Fadlallah, and others; and Mr. Fadlallah's assignment of various school officials to monitor my classroom with the specific purpose of harassing me, fabricating problems that did not exist, and filing negative reports against me.

11. Dearborn Public Schools was aware of my disabilities from 2000 on and they had been documented. But in June 2006, as the harassment from Imad Fadlallah and his cousin/brother-in-law Majed Fadlallah was ramped up, I was asked to provide documentation again and repeatedly thereafter to the point that school officials required further documentation with nitpicking precision on words and terms used in documentation before they would accommodate my disabilities.

12. Despite the documentation I provided, my teaching schedule and parent-teacher conference schedule repeatedly failed to comport with my medical needs on many occasions. Despite my repeated complaints about this both verbally and in writing, Dearborn Public Schools repeatedly refused to comply and demanded that I jump through more hoops, providing more documentation of my condition, requiring the involvement of my attorney. My teaching schedule did not comply with the documentation provided and the conditions set forth therein and my teaching schedule was only modified after repeated harassment and the involvement of my attorney. I was not accommodated and on many occasions, I was not provided an air conditioned room despite a May 2006 note requiring such a room. I repeatedly raised the issue of classroom assignment, but I was ignored.

13. My teaching specialty is science, not mathematics. I was switched from teaching science to math not because I voluntarily requested the switch, but because I was forced to do something to attempt to have a fresh start and avoid the discrimination and harassment and problem students I was assigned, but the switch did not achieve those purposes because the Dearborn Public Schools continued to harass me and assign me problem students in large numbers. My switch in teaching subjects was not the reason I was denied an air-conditioned classroom. I was denied an air-conditioned classroom because the Dearborn Public Schools continued to harass me, create a hostile work environment, and refuse to accommodate me.

14. Accommodations of my medical needs were never made by the Dearborn Public Schools, and instead, I was repeatedly disciplined over my medical needs, including my need to take shots and eat food during Parent-Teacher Conferences and use the bathroom.

15. A memorandum dated March 22, 2007 was written as a pretext to use against me and to avoid accommodating my medical needs. In fact, it is evidence of that lack of accommodation and deliberate hostile behavior using my disability to harass me. In fact, I was told by Imad Fadlallah that I was absolutely not allowed to leave Parent-Teacher Conferences, even for a short time, to attend to my medical needs and disabilities.

16. The foregoing statements are made based on my personal knowledge.

_____
Bryan Purcell

Subscribed and sworn to before me this 7th day of December, 2012.

_____
Notary Public – D. Schlussel
Oakland County, Michigan

My commission expires: 04/09/2014

4