**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRYAN PURCELL and
GEORGENE STERGALAS,

     Plaintiffs,

v.                               Case No. 10-13444

IMAD FADLALLAH, et al.,

     Defendants.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Bryan Purcell and Georgene Stergalas sued Dearborn Public Schools (the "District") and various District administrators alleging thirteen causes of action under state and federal law, most of which are rooted in racial and religious discrimination. Defendants move for summary judgment. The motion has been fully briefed, and a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the court will grant Defendants' motion.

## I. BACKGROUND

Purcell and Stergalas each allege that, as employees of the District, they suffered discrimination and violations of their constitutional rights by school administrators. As Purcell's and Stergalas's interactions with Defendants do not overlap, Plaintiffs' histories with Defendants will be discussed separately.

### A. Bryan Purcell

Purcell was hired as a teacher by the District in the 2000-2001 school year and worked exclusively at Fordson High School ("Fordson") until his termination in June

2012.  During his employment, Purcell alleges that he suffered discrimination because he is non-Arab, does not practice Islam, and has Type 1 diabetes.  Purcell claims that Maysam Alie-Bazzi, who served as Fordson's assistant principal during the 2010-2011 and 2011-2012 school years, visited his classroom and encouraged his students to attack him.  Purcell asserts that Alie-Bazzi refused to discipline those students who attacked him and then allowed them back into his classroom immediately following the attack.[1]  Furthermore, Purcell claims that Alie-Bazzi placed a police officer in Purcell's classroom directly in front of his desk while Purcell was attempting to teach a class. Purcell called Fordson's main office to request administrator assistance when Alie-Bazzi visited his classroom.

Youssef Mosallam was appointed the principal of Fordson for the 2010-2011 school year and, in March 2011, conducted a formal classroom observation and evaluation of Purcell.  Purcell claims that the evaluation was not legitimate and contained fabricated allegations used as pretext to initiate his eventual termination.

Imad Fadlallah served as Fordson's principal beginning in 2004 and retried in 2010.  Purcell avers that Fadlallah harassed him by assigning Purcell to teach a high percentage of disruptive and failing students.  Purcell claims that Fadlallah also ordered school officials to monitor his classroom and file false, negative reports regarding his teaching capabilities.

Purcell is diabetic and claims that the District was aware of his medical condition since 2000 but that, in 2006, Defendants harassed him by again requesting

---

[1] Though Purcell never clarifies, it appears that the attack was physical, as opposed to verbal.

documentation of his medical condition.  Defendants aver that, in June 2006, Purcell for the first time provided them with documentation of his medical condition that stated he required a work schedule that allowed him to eat every two to three hours.  Three times during his employment, during the 2006-2007, 2008-2009, and 2009-2010 school years, Purcell notified the District that his teaching schedule did not satisfy his medical needs. For the 2008-2009 and 2009-2010 school years, Purcell concedes that the District modified his schedule to his satisfaction.  For the 2006-2007 school year, Purcell claims that his amended schedule did not remedy his needs, but does not explain how the new schedule prevented him from eating every two to three hours.

On May 26, 2006, Purcell presented a medical note that said he required an air conditioned classroom because of his allergies.  Defendants claim that they assigned Purcell to such a room continuously from 2006 through the 2009-2010 school year. Defendants state that Purcell did not have an air conditioned classroom for the 2010-2011 year only because he switched from teaching science classes to math classes.  All of the math classrooms were grouped together, which prevented Purcell from having an air conditioned classroom.  Purcell contends that he was never given an air conditioned classroom following his May 2006 medical note and that he voluntarily switched from science to math classes in order to avoid being harassed by the difficult students to whom he was assigned to teach.

Purcell claims that he filed complaints of this harassment with Thomas Rafferty, the District's director of human resources.  Purcell asserts that, instead of investigating the complaints, Rafferty retaliated against him by writing negative employee evaluations as a pretext for Purcell's termination.

3

Brian Whiston, the District's superintendent, and Mosallam sought to terminate Purcell and filed tenure charges against him. On May 17, 2011, the tenure charges were presented to the Board of Education for the District and, during a public meeting on May 23, 2011, the Board voted to proceed on the tenure charges. Purcell appealed to the Michigan State Tenure Commission, and an administrative law judge ("ALJ") considered the tenure charges during a nine-day hearing. On June 8, 2012, the ALJ issued a preliminary order that found there was just and reasonable cause for the district to terminate Purcell. Consistent with the ALJ's order, Purcell was terminated effective June 8, 2012. Purcell filed forty-three "Exceptions" to the ALJ's order. The State Tenure Commission rejected the Exceptions and adopted the ALJ's preliminary order. Purcell did not appeal the State Tenure Commission's decision with the Michigan Court of Appeals.

### B. Georgene Stergalas

Stergalas was hired as a teacher by the District in 1995 and assigned to teach at Fordson. On September 26, 2008, Stergalas requested to transfer to either Dearborn High School or Edsel Ford High School. In April 2009, Stergalas was transferred to Dearborn High School where she currently remains employed.

Stergalas claims that she was discriminated against because she is a non-Muslim, non-Arab female. A student allegedly told Stergalas that the student was a "victim of [Fadlallah's] violence" and asked for Stergalas's advice on how to handle the situation. (Dkt. # 53-1 at Pg ID 1094.) Stergalas claims that she told the student to report the incident to the authorities and that Fadlallah harassed Stergalas in retaliation. Stergalas contends that, at one time, Fadlallah assigned her to simultaneously teach

4

two classes in different parts of the school.  When Stergalas complained about the assignment, Fadlallah allegedly yelled at her in front of students.  Stergalas asserts that Fadlallah ordered the emergency phone to be removed from her classroom and that Fadlallah shared Stergalas's medical records with third parties without her consent.  Finally, Stergalas avers that Fadlallah encouraged students to spy on and speak negatively about her.

Stergalas claims that Whiston and Rafferty knew of Fadlallah's discriminatory behavior and, instead of stopping Fadlallah's actions, encouraged Fadlallah to continue the discrimination.  Stergalas filed a harassment complaint with Rafferty in January 2009 who then conducted an internal investigation.  Stergalas, however, claims that Rafferty did not actually investigate the complaint but instead "rubber-stamped a complete whitewash of the [District's] outrageous and discriminatory behavior against [her] based on [her] status as a non-Muslin, non-Arab woman and whistleblower."  (Dkt. # 53-1 at Pg ID 1093.)  While Stergalas admits that she filled out a form to request transfer from Fordson, she claims that she had no input in the matter and did not wish to be transferred.  Instead, she maintains that she was forced to do so as a part of Fadlallah's plan to expel from Fordson all employees who were non-Muslim, non-Arab, female, or whistleblowers.

In June 2009, Purcell and Stergalas filed complaints with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination claims against Fadlallah, Mosallam, Alie-Bazzi, Whiston, Rafferty, and the District.  The EEOC was unable to conclude whether Defendants violated any statutes and issued to Plaintiffs right-to-sue

letters.  Plaintiffs timely filed this action on August 27, 2010, and which is now before the court on Defendants' motion for summary judgment.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must first show the absence of a genuine issue of material fact.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must put forth enough evidence to show that there exists a genuine issue to be decided at trial.  *Plant*, 212 F.3d at 934 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Id.* at 251-52.  When deciding summary judgment motions, "the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita*, 475 U.S. at 587). The court does not weigh the evidence to determine the truth of the matter, but rather to

6

determine if the evidence creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497

(quoting *Anderson*, 477 U.S. at 249).

## III. DISCUSSION

Defendants move for summary judgment on Plaintiffs' thirteen counts.  Plaintiffs'

response brief suffers from two defects that are fatal to their claims.  First, the *only*

evidence Plaintiffs offer to establish an issue of fact are Purcell's affidavit and

Stergalas's affidavit.  These affidavits are replete with conclusory assertions but contain

few detailed, factual allegations, rendering their evidentiary value to be "merely

colorable" at best.  Second, Plaintiffs' response brief is devoid of the fundamental

components of legal analysis: outlining a cause of action into its requisite elements,

alleging facts that satisfy those elements, and citing evidence that supports those facts.

Instead, Plaintiffs' response brief offers conclusion after conclusion without any attempt

to inform the court of how that conclusion was reached.  For these two reasons,

Defendants' motion could be summarily granted.  But for the sake of completeness,

each count will be addressed in turn.

### A. Collateral Estoppel

Defendants contend that because Purcell advanced certain defenses in his

termination proceedings before the Michigan State Tenure Commission, he is

collaterally estopped from litigating violations of the Free Exercise Clause of the First

Amendment (Count 1); the Equal Protection Clause of the United States Constitution

(Count 4); the Americans with Disabilities Act (Count 7); the Equal Protection Clause of

the Michigan Constitution (Count 8); the Elliott-Larsen Civil Rights Act (Count 9); the

7

Persons with Disabilities Civil Rights Act (Count 10); and Title VII of the Civil Rights Act of 1964 (Count 13).

The decisions of state administrative agencies are not given preclusive effect by collateral estoppel when a claim is brought under Title VII, *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 827 (6th Cir. 2013) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 795-96 (1986)), or the Americans with Disabilities Act, *Smith*, 708 F.3d at 827-28. The court need not decide, however, whether Purcell is collaterally estopped from litigating the remaining five causes of action. Even if these claims are not precluded, they fail to survive summary judgment because Purcell does not establish a genuine issue of fact.

### B. First Amendment Claims

#### i. Free Exercise of Religion (Count 1)

Plaintiffs allege that Defendants infringed their First Amendment right to freely practice their religion. The Free Exercise Clause protects the right to hold a religious belief and engage in conduct motivated by the relief. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 427 (6th Cir. 2002) (citing *Emp't Div. v. Smith*, 494 U.S. 872, 877 (1990)). Purcell, in his affidavit, never alleges that Defendants prohibited him from practicing his religion. Similarly, Stergalas does not specify the religious conduct that Defendants prohibited. Instead, Stergalas simply claims that she "felt intimidated from exercising [her] First Amendment rights with regard to engaging in protected speech and permissible religious observances." (Dkt. # 53-1 at Pg ID 1094.) Plaintiffs have not offered evidence to support their claim that Defendants violated their right to freely exercise their religion. Thus, summary judgment is warranted.

#### ii. Freedom of Speech (Count 2)

Plaintiffs claim that Defendants violated their First Amendment right to free speech.  When considering whether a public employer has violated a public employee's right to free speech, the court first determines whether the speech was directed toward a matter of public concern.  *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).  If so, then the court must decide whether the employee's interest in making the speech outweighed the employer's interest in regulating the speech.  *Id.*  Here, Purcell's affidavit does not claim that Defendants abridged his freedom of speech, let alone what public speech he made that Defendants regulated.  Stergalas fairs no better, stating only that she "felt intimated . . . to engag[e] in protected speech."  (Dkt. # 53-1 at Pg ID 1094).  Neither Purcell nor Stergalas allege what speech Defendants unlawfully regulated.  Thus, the court is unable to determine whether the speech was directed at a matter of public concern or if Plaintiffs' interest in making the protected speech outweighed Defendants' interest in regulating the speech.  The court will grant Defendants summary judgment on Plaintiffs' free speech claim.

### iii. Freedom of Expressive Association (Count 3)

Plaintiffs assert that Defendants violated their First Amendment right of expressive association.  In analyzing an expressive association claim, the first step of a three-part test is determining whether a group is entitled to protection.  *Miller v. City of Cincinnati*, 622 F.3d 524, 538 (6th Cir. 2010) (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000)).  Plaintiffs' claim fails at this first step.  Neither Purcell nor Stergalas allege the group with which they sought to associate and engage in expressive activity.  Accordingly, summary judgment on the claim will be entered.

### iv. Establishment Clause (Count 6)

9

Plaintiffs assert that Defendants violated the Establishment Clause by promoting Islam over other religions, in particular Christianity.  Under the test outlined in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), a state action violates the Establishment Clause if: "(1) the purpose of the state action is to aid or promote religion; (2) the primary effect of the action is to aid or promote religion; or (3) the result is excessive entanglement with religion."  *Rusk v. Crestview Local Sch. Dist.*, 379 F.3d 418, 420 (6th Cir. 2004).  Plaintiffs fail to clarify what action was taken by Defendants that violated the Establishment Clause.  Plaintiffs state generally and in conclusory terms that "Defendants established a preferred religion, Islam," and that "Defendants aided and promoted the Islamic religion and excessively entangled in religion, including the enactment of Islamic religious restrictions."  (Dkt. # 53 at Pg ID 1087.)  But these assertions are not supported by facts or any citation to the record; just what state action is supposed to have violated the Establishment Clause remains a mystery.

The only possible "state action" that can be discerned from Plaintiffs' response brief is Fadlallah's alleged comments that Fordson is a school for Muslims and Arabs.  In their respective affidavits, both Plaintiffs assert that "[i]t is well known that Imad Fadlallah has made repeated statements that he sees Fordson as a Muslim and/or Arab school and that he would conduct and did conduct affairs accordingly."  (Dkts. # 53-1 at Pg ID 1094; # 53-2 at Pg ID 1095.)  But Plaintiffs do not argue how Fadlallah's "well known" statements constituted a "state action," as they do not disclose of what any such statements consisted, how the statements were made (e.g., at a school event or in an official school letter disseminated to students and faculty), or who may have heard

10

them.  Nor do Plaintiffs attempt to establish that Fadlallah's statements violated the *Lemon* test.

Without any explanation of what state action is supposed to have violated the Establishment Clause, the claim fails.

### C. Religious Discrimination (Counts 4, 8, & 9)

Plaintiffs argue that Defendants discriminated against them for not practicing Islam.  Plaintiffs allege their religious discrimination claim under the Equal Protection Clause of the United States Constitution, U.S. Const. amend. XIV, § 1, (Count 4), the Equal Protection Clause of the Michigan Constitution, Mich. Const. art. I, § 2, (Count 8), and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* ("ELCRA"), (Count 9).  "Michigan's equal protection provision is coextensive with the Equal Protection Clause of the United States Constitution."  *Shepherd Montessori Ctr. Milan v. Ann Arbor Charter Twp.*, 783 N.W.2d 695, 697 (Mich. 2010).  The elements for establishing an equal protection claim under the Fourteenth Amendment are the same as those to satisfy a disparate treatment claim under Title VII of the Civil Rights Act of 1964.  *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).  Claims brought pursuant to the ELCRA are also analyzed using the Title VII framework.  *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).  Thus, Plaintiffs' religious discrimination claim brought pursuant to the United States Constitution, Michigan Constitution, and ELCRA will be analyzed together using the Title VII standard.

In a Title VII claim, the plaintiff must show that "(1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) for the same or similar conduct, he was treated differently

11

from similarly situated non-minority employees." *Perry*, 209 F.3d at 601 (citations omitted). Two employees are "similarly situated" when they "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citation omitted). Here, Plaintiffs do not identify an employee with whom they claim to be similarly situated. Nor do Plaintiffs attempt to show that Defendants treated differently an employee who was similarly situated to Plaintiffs "in all respects." *Mitchel v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis omitted). Thus, Plaintiffs do not meet their burden, and their claim for religious discrimination fails under the United States Constitution, the Michigan Constitution, and the ELCRA.

### D. Fourteenth Amendment Due Process (Count 5)

#### i. Substantive Due Process - Vagueness

Plaintiffs allege in their complaint that Defendants' work policies are impermissibly vague in violation of the Fourteenth Amendment. A law is void for vagueness if it "fails (1) to define the offense with sufficient definiteness that ordinary people can understand prohibited conduct, and (2) to establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999). In response to Defendants' motion, Plaintiffs do not identify the work policy that they allege to be unconstitutionally vague; in fact, Plaintiffs do not even reference their void-for vagueness claim. As Plaintiffs abandon the claim, the court will grant summary judgment for Defendants.

12

ii. Procedural Due Process

Plaintiffs' complaint states that they were denied procedural due process under the Fourteenth Amendment when Defendants "publicly disseminated false, defamatory, and stigmatizing information about Plaintiffs, absent notice and a legitimate opportunity to be heard." (Dkt. # 27 at Pg ID 349 ¶ 106.) Like Plaintiffs' substantive due process claim, this one is also abandoned. Plaintiffs do not state in their response brief what information about Plaintiffs was publicly disseminated, when, how, and to whom it was disseminated, why it was false and defamatory, or why Plaintiffs were entitled to notice and an opportunity to be heard before the information was disseminated. Plaintiffs do not address how or when their procedural due process rights were violated, and the claim necessarily fails.

**E. Disability Discrimination**

i. Americans with Disabilities Act (Count 7)

Purcell claims that Defendants discriminated against him for having diabetes and failed to accommodate his medical needs in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"). In order to establish a prima facie claim for discrimination, a plaintiff must first prove that he is "disabled" under the ADA. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 252 (6th Cir. 2000). A plaintiff's "ability to show that he is 'disabled' within the meaning of the [ADA] is a threshold requirement for recovery under the Act." *Id.* at 253 (citation omitted). "An individual is considered 'disabled' under the ADA if he or she:

> (A) has a physical or mental impairment that substantially limits one or more of [his or her] major life activities . . .;

13

(B) has a record of such impairment; or

(C) is regarded as having such an impairment.

*Id.* at 252 (citing 42 U.S.C. § 12102(2)).

Purcell makes no attempt to establish that his diabetic condition renders him disabled under the ADA. Throughout his affidavit, Purcell baldly asserts that he has a disability without providing facts to support the conclusion. In response to Defendants' motion, Purcell professes, without explanation or argument, that he "has established that he was regarded as having a physical or mental impairment that 'substantially limits' one or more of his major life activities." (Dkt. # 53 at Pg ID 1082.) But the ADA requires a plaintiff to show that his impairment "substantially limits" his ability to engage in a "major life activity," both of which are terms of art requiring analysis. "Major life activities" are "'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Burns*, 222 F.3d at 252 (quoting 29 C.F.R. § 1630.2(i)). "Substantially limits" means "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Burns*, 222 F.3d at 252 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Courts consider a number of factors in determining whether an impairment is substantially limiting such as:

(i) The nature and severity of the claimant's impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

14

*Burns*, 222 F.3d at 252 (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)).  "Whether a person has a disability under the ADA is an individualized inquiry," *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 472 (1999), because "a physical condition that would not substantially limit one person's ability to work could substantially limit another's depending on each person's occupation and range of qualifications," *Burns*, 222 F.3d at 253.  But Purcell does not attempt this individualized inquiry.  Purcell does not discuss the relevant factors or conduct any analysis to establish that his diabetes "substantially limits" a "major life activity."  Nor does his affidavit offer any evidence to support that conclusion that Purcell is disabled under the ADA.  Thus, the court will grant summary judgment in favor of Defendants.

### ii. Persons with Disabilities Civil Rights Act (Count 10)

The Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq.*, ("PWDCRA") prohibits an employer from discriminating against an employee because of a disability "that is unrelated [or not directly related] to the individual's ability to perform the duties or a particular job or position."  *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004) (citing Mich. Comp. Laws § 37.1202(1)(a)-(e)).   Similar to the ADA, the PWDCRA requires a plaintiff to first show that he is "disabled" within the meaning of the statute.  *Peden*, 680 N.W.2d at 863.  The PWDCRA defines "disability" in nearly identical language as the ADA:

> (i) A determinable physical or mental characteristic of an individual . . . if the characteristic (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position . . .;
>
> (ii) A history of [such a] determinable physical or mental characteristic . . .; or

(iii) Being regarded as having [such a] determinable physical or mental characteristic . . . .

*Id.* (citing Mich. Comp. Laws § 37.1103(d)).  As with his ADA claim, instead of analysis and reference to the record, Purcell offers only the bald assertion that he "has brought forth evidence that he was disabled under [the PWDCRA]."  (Dkt. # 53 at Pg ID 33.) Thus, for the same reasons that Defendants will be granted summary judgment on Purcell's ADA claim, Purcell's PWDCRA claim fails.

### F. Whistleblowers' Protection Act (Count 11)

Stergalas alleges that a student told her that the student was a "victim of violence" at the hands of Fadlallah (how Fadlallah victimized the student is never explained).  Allegedly, the student asked Stergalas whether the student should report the incident of violence to the authorities, and Stergalas encouraged the student to do so.  Stergalas claims that, in response, Fadlallah retaliated against her by removing the emergency telephone from her classroom, assigning her to teach two classes simultaneously when the classrooms were at opposite ends of the school, yelling at Stergalas in front of her students and colleagues, and initiating a non-stop "whispering campaign" against her.  Stergalas argues that Fadlallah's actions violated Michigan's Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361 *et seq.* ("WPA").

To establish a claim under the WPA, the plaintiff must show that he "(1) was engaged in protected activity as defined by the Whistleblowers' Protection Act, (2) the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge."  *Shallal v. Catholic Soc. Servs. of Wayne Cnty.*, 566 N.W.2d 571, 574 (Mich. 1997).  Stergalas asserts that encouraging the student to report

16

Fadlallah's violence to the authorities constitutes a protected activity.  Stergalas argues that "[t]he fact that she herself did not report [the violence] directly but encouraged the minor student to do so and counseled him does not make the activity any less protected."  (Dkt. # 53 at Pg ID 1089).  Actually, it does.  "'Protected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation."  *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 212 (Mich. 1998) (citing Mich. Comp. Laws § 15.362).  Perhaps directly assisting in someone else's report could suffice, but mere verbal encouragement of another person to report a violation, without more, does not fall under any of these categories, and thus does not constitute "protected activity" under the WPA.

Moreover, Stergalas does not point to any evidence indicating a causal connection between her encouragement and her discharge.

The court will grant Defendants summary judgment on Stergalas's WPA claim.

### G. Right to Privacy (Count 12)

Stergalas argues that the District and Fadlallah disclosed her medical records to third parties in violation of the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, ("HIPAA") and the common law right to privacy.  The claim fails under HIPAA because the statute does not provide a private right of action for alleged disclosures of confidential medical information.  *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (holding that "HIPAA does not create a private right of action"); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) (same); *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (same).

17

Michigan common law provides four theories of invasion of privacy: "(1) the intrusion upon another's seclusion or solitude, or into another's private affairs; (2) a public disclosure of private facts about the individual; (3) publicity that places someone in a false light in the public eye; and (4) the appropriation of another's likeness for the defendant's advantage." *Lewis v. LeGrow*, 670 N.W.2d 675, 687 (Mich. Ct. App. 2003). Stergalas never specifies which theory she alleges or attempts to apply the facts and evidence in this case to one of them. By not providing the court with any guidance regarding which invasion-of-privacy theory is at issue, Stergalas effectively abandons the claim.

Of the four theories, public disclosure of private facts about an individual is the most applicable based on Stergalas's allegations. A claim for public disclosure of private facts requires "(1) the disclosure of information, (2) that is highly offensive to a reasonable person, and (3) that is of no legitimate concern to the public." *Doe v. Mills*, 536 N.W.2d 824, 828 (Mich. Ct. App. 1995). Stergalas argues that Defendants released her medical records, including the fact that she was seeing a psychiatrist, to a school social worker and other third parties. Information regarding a person's medical treatment or condition are generally considered private. *Id.* at 829. However, Stergalas fails to produce evidence to create a genuine issue of material fact regarding whether Defendants actually disclosed her medical records. The only evidence Stergallas offers is a single statement in her affidavit that reads "I do have personal, direct, firsthand knowledge . . . that Mr. Fadlallah illegally shared my medical records and other confidential information about me with third parties and induced those third parties to harass me." (Dkt. # 53-1 at Pg ID 1093-94.) But "a party cannot create a genuine issue

18

of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997).  Such a situation is present here. Defendants moved for summary judgment in October 2012 and highlighted Stergalas's deposition testimony that she had "[n]o direct firsthand knowledge" that Fadlallah was involved "in any way" in sharing her medical information with anyone.  (Dkt. # 41-9 at Pg ID 763.)  In response to Defendants' motion, Stergalas filed an affidavit dated December 7, 2012, asserting that she did have such knowledge.  As Stergalas's affidavit was filed after Defendants moved for summary judgment and contradicts her earlier deposition testimony, it cannot be used to create a genuine issue of material fact.

Furthermore, even if the affidavit did not contradict Stergalas's deposition testimony, it is insufficient to create an issue of fact that Fadlallah improperly shared Stergalas's medical information.  The affidavit simply asserts that Fadlallah did so without alleging what medical records Fadlallah shared, when Fadlallah shared those records, or which third parties learned of the medical records.  Summary judgment is appropriate when the evidence favoring the nonmoving party is "not significantly probative" and a jury could not return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249-50.  Stergalas's affidavit is not, by itself, sufficient evidence for a jury to find in favor of Stergalas, and summary judgment is warranted.

**H. Retaliation (Count 13)**

Purcell alleges that Defendants retaliated against him in violation of Title VII after he filed complaints against Defendants with the EEOC and in federal court.[2] Specifically, Purcell argues that Defendants retaliated against him by: (1) placing a police officer in his classroom; (2) encouraging students to harass and attack him; (3) twice having security guards escort him off of campus and in front of his students; and (4) terminating him.  To establish a prima facie claim for retaliation, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a casual connection between the protected activity and the adverse employment action."  *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008).  In regards to the first three retaliatory acts, Purcell's affidavit does not constitute sufficient evidence to create a genuine dispute of fact that such acts occurred.  Nor does Purcell's affidavit allege when such acts occurred in order to establish a "casual connection" between his filing of complaints against Defendants and their alleged retaliatory acts.  It is undisputed, however, that Purcell was terminated and that termination constitutes an "adverse employment action."  The court assumes, without deciding, that Purcell has established the remaining elements for a prima facie claim for retaliation and will continue with the Title VII analysis.

---

[2] In response to Defendants' motion, Stergalas, for the first time, alleges that Defendants unlawfully retaliated against her in addition to Purcell.  Count 13 of the complaint specifies that only Purcell is alleging unlawful retaliation, and the factual allegations within the Count refer solely to Purcell by name.  As Defendants were not placed on notice that they had to defend a Title VII claim for retaliation with respect to Stergalas, the court will not consider Stergalas's untimely allegations.

After the plaintiff has made a prima facie claim, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its action. *Martin*, 548 F.3d at 412. When Defendants sought to terminate Purcell, they followed the procedures outlined in the Michigan Teacher's Tenure Act, Mich. Comp. Laws § 38.71 *et seq.*, and filed tenure charges against Purcell alleging that he lacked the ability to teach his students, failed to effectively discipline his students or manage a classroom environment, and was unable to establish a positive learning environment in the classroom. These tenure charges satisfy Defendants' burden of offering a nondiscriminatory reason for Purcell's termination.

Once an employer offers a nondiscriminatory reason, "the burden then shifts to the plaintiff to demonstrate by a preponderance of evidence that the legitimate reason given by the employer was a pretext for retaliation." *Martin*, 548 F.3d at 412. "In order to establish pretext, a plaintiff must demonstrate that (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate plaintiff's termination; or (3) the proffered reason was insufficient to motivate plaintiff's discharge." *Id.* Here, Purcell fails to meet his burden of establishing pretext. In considering the tenure charges, the ALJ and Michigan State Tenure Commission ruled in favor of Defendants and found that there was reasonable and just cause to terminate Purcell. Thus, Defendants' proffered reasons for terminating Purcell appear to be based in fact and were sufficient to motivate his termination. Purcell has not offered evidence to the contrary or to show that the tenure charges did not actually motive his termination. Accordingly, as Purcell has not demonstrated that there is an issue of fact regarding whether the tenure charges were a pretext for his termination, his retaliation claim fails.

22

**IV. CONCLUSION**

This case began with highly alarming allegations of gross misconduct and nearly unimaginable religious intolerance manifested, most shockingly, by the highest-ranking officials in a public school.  If it were true that a public school was being transformed into a religiously restricted, unconstitutionally discriminatory environment, and that objecting employees were made to suffer for their opposition to it, such information should have been proved up and substantial penalties imposed upon the responsible parties.  With the complaint, the fuse to this explosive case was lit.  But it eventually fizzled out in the absence of evidence, or perhaps in the wake of inattention—the court knows not which.  The court imagines that Plaintiffs could have brought a focused lawsuit that alleged a few (potentially) meritorious claims specifically tailored to the appropriate parties.  Instead, Plaintiffs seem to have thrown at the Defendants everything but the kitchen sink—thirteen counts—in the apparent hope that one or two central claims might survive even without actual evidence.  The strategy proved fatal. Most claims languished in want of discovery and remained undeveloped; the others were simply abandoned.  Accordingly,

IT IS ORDERED that Defendants' motion for summary judgment [Dkt. # 41] is GRANTED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 17, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 17, 2013, by electronic and/or ordinary mail.

23

 s/Richard Loury for Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522